## ANNA ERICKSON v. A. C. WIPER.

### (157 N. W. 592.)

**Complaint — attacked first — introduction of evidence — liberally construed — sustained when possible.**

1. A complaint attacked by objection to the introduction of evidence will be liberally construed, and the pleading will be sustained if possible.

**Statute of frauds — invoked on trial — must be — waived — supreme court.**

2. The protection of the statute of frauds must be invoked in some appro-

NOTE.—The growth of the doctrine that the consideration clause in a deed is merely a receipt, and that parol evidence is admissible to explain the consideration for almost every purpose except to allow a grantee to avoid the deed where no fraud or mistake is shown, is set forth in notes in 20 L.R.A. 101, and 25 L.R.A.(N.S.) 1194, and the case of ERICKSON v. WIPER is in accord with the modern doctrine. For a further consideration of this subject, see note in 68 L.R.A. 298, referred to

priate manner in the trial court, and cannot be invoked for the first time in the appellate court.

**Statute of frauds — contracts — full performance — no application — acceptance — unperformed part — payment of money.**

3. The statute of frauds has no application where there has been a full and complete performance of the agreement by one of the contracting parties, and acceptance of such performance by the other party, and the part remaining to be performed is merely the payment of money.

**Contemporaneous agreement — parol — written contract — inducing cause — consideration — evidence — admissible.**

4. A parol contemporaneous agreement which constituted the inducing cause of a written contract, or formed a part of the consideration therefor, is generally admissible in evidence.

**Receipt of money — acknowledgment of — clause in deed — not conclusive — explanation — by parol.**

5. The clause in a deed acknowledging receipt of a certain sum of money as consideration therefor is not conclusive, but is open to explanation or contradiction by parol proof.

**Estoppel by deed — defense of — must be pleaded — opportunity.**

6. As a general rule the defense of estoppel by deed is not available unless pleaded, where the party seeking to assert such defense had an opportunity to plead it.'

**Equitable estoppel — by deed — in pais — parties — situation — change in — deed or statements — reliance on — loss probable.**

7. An equitable estoppel by deed or *in pais* is not created or enforceable unless there has been a change in the situation of one of the parties in reliance on the deed or statements; and the party setting up the estoppel must show that he will be subjected to a loss if he cannot set up the estoppel.

**Cross-examination — new matter — disclosed on — adverse party — may re-examine — as to such matter.**

8. Where new matter is brought out on cross-examination of a witness, the adverse party is entitled to re-examine the witness regarding such new matter.

---

in the dissenting opinion on parol evidence to vary the consideration clause of a deed.

The necessity of pleading the statute of frauds is the subject of a comprehensive note in 49 L.R.A.(N.S.) 29, setting forth the rule in accord with ERICKSON v. WIPER that unless the statute of frauds is presented as a defense in the trial court that objection to the contract cannot be made for the first time on appeal.

See also notes in 86 Am. Dec. 684, and 78 Am. St. Rep. 650, on when and how the statute of frauds must be pleaded.

**Error — assignments of — rulings — admission of evidence — based on — specific — direct.**

9. Assignments of error based upon rulings in the admission and exclusion of testimony should be specific and point out the particular ruling or rulings complained of.

**Evidence — testimony — admission of — rulings on — nonprejudicial.**

10. Certain rulings in the admission and exclusion of testimony examined and held correct or nonprejudicial.

**Witness — answers — irresponsive — striking out — error — like testimony — in record — cured.**

11. The error, if any, in striking out an answer as irresponsive is cured where the witness elsewhere in his testimony has testified, or is permitted to testify, to the substance of the answer stricken.

**Directed verdict — motion for — denial of.**

12. It is *held,* for reasons stated in the opinion, that defendant's motion for a directed verdict was properly denied.

**Error — party asserting — proof of — burden — record — must clearly appear from.**

13. A party asserting error has the burden of proving it, and must present a record affirmatively showing such error.

**Attorney's argument — error on — objectionable language — record must show.**

14. A party predicating error on an attorney's argument to the jury must present a record affirmatively showing that objectionable language was used.

**Nonsuit — directed verdict — motion for — trial court — grounds there urged — supreme court — will only consider — cannot be changed.**

15. In reviewing a ruling on a motion for nonsuit or a directed verdict, the appellate court will consider only the grounds urged in the trial court, and appellant will not be permitted to change them or to add others in the appellate court.

Opinion filed March 6, 1916.

From a judgment of the District Court of Ward County, *Leighton,* J., defendant appeals.

Affirmed.

*Greenleaf, Bradford, & Nash,* for appellant.

A contract for the sale of real property or *an interest therein* is invalid unless the same or some note or memorandum thereof is in

writing and subscribed by the party to be charged, or by his agent. Rev. Codes 1905, § 5332.

In the absence of fraud, mistake, or ambiguity, the accepted rule is that parol evidence is not admissible to vary or change the terms of a written instrument. Greenl. Ev. 15th ed. § 275.

*E. R. Sinkler,* for respondent.

The court in every stage of an action may disregard any error or defect in the pleadings, which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect. Comp. Laws 1913, § 7485.

"Where an oral promise relating to the transfer of real property has been performed, the contract of which it is a part is no longer within the statute of frauds by reason of such promise, and accordingly an action will lie for a breach thereof. This is true of agreements to lease and to sell real property, or some interest therein." 22 Cyc. 293, and cases cited.

"If an agreement which was unenforceable because within the statute of frauds has been performed, an action will ordinarily lie for a refusal to perform a promise given in consideration thereof, or in connection therewith." 22 Cyc. 293, 294, and cases cited.

The consideration mentioned in the deed may be inquired into, or explained by parol. It, of itself, is not conclusive of the fact. Martin v. White, 115 Ga. 866, 42 S. E. 279; Velton v. Carmack, 20 L.R.A. 101, note; Shehy v. Cunningham, 25 L.R.A.(N.S.) 1194, and note, 81 Ohio St. 289, 90 N. E. 805; Fowlkes v. Lea, 68 L.R.A. 925, and note, 84 Miss. 509, 36 So. 1036, 2 Ann. Cas. 466.

Where there is substantial conflict in the evidence, a new trial will not be granted. Becker v. Duncan, 8 N. D. 600, 80 N. W. 762; Muri v. White, 8 N. D. 58, 76 N. W. 503.

CHRISTIANSON, J. On July 22, 1911, and for several years prior thereto, the plaintiff was living with her husband, John Erickson, upon the southeast quarter of section 23, township 161, range 90, in Burke county. This land adjoined the town site of Coteau. John Erickson was the record owner thereof, but it is undisputed that it was occupied

by him and his wife (the plaintiff), and their children as their home, and that the plaintiff had a homestead interest therein.

It is also undisputed that on July 22, 1911, John Erickson and the plaintiff herein, as his wife, executed and delivered to the defendant, Wiper, a warranty deed for this tract of land, subject to the encumbrances of record against the same. The controversy involved in this lawsuit relates to the circumstances and conditions under which the transfer was made, and the amount to be paid by Wiper, and the manner of such payment. Wiper testifies that on the 21st of July, 1911, he went to Erickson's farm to look after certain interests, and he gives the following version of a conversation had at that time: "They were very anxious to go to Canada. Mrs. Erickson was very anxious to have John go to Canada to get some land, because he was drinking so hard that she thought if he got away from old associates he might accomplish something in making a home for them. They wanted to sell me this particular piece of land, saying they owed so much on it, and there was a second crop failure staring them in the face, and unless they could get some money from me they did not know how they could get to Canada. They expected any time there would be a suit started, foreclosures and judgments rendered so they would be unable to get anything, and wanted me to buy the land, and they wanted $5,000 for the land to start on. I told them I could not think of giving $5,000 for the land. I would not consider it at all. Finally they asked me if I would consider it at $4,500. I said 'No,' I would be willing to take the land at $4,000, and give them the privilege of redeeming the land within a reasonable time at the same price at any time before the 1st of April, for at that time I would have to make some arrangements for the cropping of it. They decided to accept that offer. I told them they could think it over, and if they felt the same way to-morrow, Saturday, or any later date, they might come in and we would deal along those lines. . . ."

Wiper's testimony regarding this conversation was corroborated by his chauffeur, Heath; although Heath says that Mrs. Erickson while present took no part in the conversation, but that this was carried on by Wiper and Erickson. Heath further testified that he and Wiper first came to Erickson's farm, and found that Erickson was in town, and

that they thereupon drove to town and took Erickson with them in the automobile, and went to examine three different tracts of land that Erickson was cropping, in which Wiper or his bank were interested; that during all of this time no talk was had about the sale of the land by Erickson to Wiper, but that this was first mentioned when they came to the Erickson farm.

Mrs. Erickson admits that Wiper came to her home on the day in question, and that some talk was had, but she denies absolutely that any talk was had outlining terms of sale as testified to by Wiper. She claims that the terms of sale were first discussed in detail and agreed upon, on the following day (July 22, 1911), when she and her husband went to defendant's bank, made the sale, and executed and delivered the deed.

She testified in part as follows:

Q. When you were in on the 22d of July, where did you go to?

A. I went in to the room in the back part of the bank.

Q. Who was with you?

A. Nobody else, only Erickson and Wiper and me.

Q. Did you have any talk about the land at that time?

A. Yes.

Q. What talk did you have with him there in the bank at that time about the land?

A. John wanted to sell the land because he wanted to go to Canada, and I says I have signed enough, but if you want to go to Canada I will sign the land if there is anything left on the land, and Mr. Wiper said he would figure it, he said there was $2,800, mortgage, and there was no more talk, and he wrote something on a piece of paper, but no more talking until I said I want to have something to say in that land, for that homestead belongs to me just as much as to him, and I have got the children to support, and if you go to Canada I cannot stay here with the children on nothing.

Q. What did he say?

A. He said you come in when the papers come back, and I will pay you all there is over the mortgage, and the land is $5,000, and the mortgage was $2,800.

Q. Who was present at the time that he told you this?

A. No one in there only Erickson, me, and Wiper.

Q. Do you know whether Wiper—where this paper was at the time you were in there?

A. Yes, that paper, you know they have a desk and that is kind of a shelf on both sides, and he pulled the paper out of there, and began to write something when we were talking, and he talked a little. Well, you understand now before I sign it I want to have read over what— he said $2,800 mortgage, and I was supposed to have the rest, and the land is $5,000.

Q. Did he agree to that?

A. Yes, he agreed to that.

Q. And then after he agreed to that did you sign the paper?

A. I did not sign any more than the deed.

Q. You signed the deed?

A. Yes.

Q. Was Wiper going to give him money to go to Canada?

A. Yes.

Q. How do you know that?

A. He told me and I heard it.

Q. Who told you?

A. My husband said to Wiper, all I want is $150 and the rest goes to my wife.

Q. I thought you said it was all to go to you?

A. He wanted $150 at this time.

Q. And the rest was to go to you?

A. Yes.

Wiper admits that John Erickson and his wife (the plaintiff), came to his bank on the day in question, and executed and delivered the deed. He also admits that some further talk was had regarding the terms of the deal, but denies flatly that he agreed to pay anything to the plaintiff.

Wiper testified in part:

I asked Mr. and Mrs. Erickson when they came in if they had anyone in town that they would care to call in, in the bank with them as a witness to that transaction, and they thought it was not necessary. This

was just before dinner.   I says you better have somebody come in with
you, Mrs. Erickson, you must know somebody in town and they
decided Mr. Dahlquist was an old friend of the family, and they would
ask Mr. Dahlquist to come in, and I said it is about dinner time and
we have not had dinner, you go to dinner and I will go to dinner, and
after dinner you come in and bring in Mr. Dahlquist or whoever you
want in, in the bank.   I should think about 2 o'clock in the afternoon
we three met at the bank.   We had not yet taken the deed, we had
not yet drawn the deed.  I asked him if Mr. Dahlquist was coming in, and
they said they had been over to his house, but he was out in the country
to his farm, and I think Mr. Erickson said we don't think it is necessary
anyhow.   We have done lots of business with you, and we always got
along all right, and I finally said all right, *and then we entered into the*
*talk about who was to have this money, whatever money might be had,*
*might be due them if any, and it was agreed that this seed lien,* these
seed lien notes that I would have it to crop if any, and convert the
proceeds into money, together with the $4,000, that I would be allowing
them for the land, would be the whole amount of their credit from it,
all of their credit including indebtedness they owed us at that time
outside of what was secured on the land, was to be deducted, together
with the amount of money I advanced him from the total proceeds, and
that the $300 that was to be paid them was simply in the way of an
advance, so John might go Canada and get some land.

Wiper further testified that he wrote the deed himself, and that he
also prepared the following written agreement embodying the terms
on which the deal was made:

July 22, 1911.

On payment to me of the sum of four thousand dollars ($4,000) less
the then encumbrances, I agree to convey to John Erickson of Coteau,
N. D., by quitclaim deed the S.E.¼ sec. 23–161–90, same being the
amount I am taking said land over at to-day.   I also agree to collect
two promissory notes signed by John Erickson in favor of the First
National Bank of Bowbells, one for $650 and one for $154.65, secured
by seed lien on lands owned and rented by John Erickson, and to pay
to John Erickson any and all money due him from such collection after

deducting amount necessary to pay me for advances necessary to make the land net me just $4,000 after paying all taxes and past due interest and any and all advances made to you up to and including cash paid at this date. Also all bills which I have guaranteed for you up to this date, which is $48 to Rogers Lumber Company.

(Signed)   A. C. Wiper.

Wiper testified that this agreement was written by himself on the typewriter, and the original handed to Erickson, but that he made a letter-press copy thereof, and such copy was received in evidence. Mrs. Erickson denied that such agreement was made or such instrument delivered. She claimed that the sale to Wiper was unconditional, and that he agreed to pay $5,000 for the land, $150 of which should be paid to John Erickson, and the remainder (after deducting mortgages aggregating $2,800) should be paid to her. The deed as already stated was prepared by Wiper himself. It recited a consideration of $5,000, and was recorded in the office of the register of deeds of Burke county on the same day it was executed. Wiper claims that he paid Erickson $100, and also paid up seed liens, interest, and taxes, which, together with the real estate mortgages assumed, would aggregate in all $4,000 and over.

Erickson went to Canada, where he died on August 28, 1911. Plaintiff instituted this action in February, 1912. The same was afterwards tried to a jury, and resulted in a verdict in plaintiff's favor for $1,553.01, with interest from July 22, 1911. The amount of the verdict was the difference between $5,000, and the amount due July 22, 1911, on the real estate mortgages, including past-due interest and taxes. The jury therefore believed that the agreement was as testified to by the plaintiff. It is conceded that if plaintiff is entitled to recover at all, she is entitled to recover the amount found by the jury. No motion for new trial was made, but defendant has appealed from the judgment entered upon the verdict, specifying various errors, which will be considered in the order in which they are presented and argued in appellant's brief.

1. Appellant's first contention is that the complaint does not state a cause of action. This objection was not raised by demurrer, but was

raised for the first time after the commencement of the trial by an objection to the first question put to plaintiff's first witness. The question and objection were as follows:

"Q. What is your name?

"Defendant's attorney:—At this time the defendant objects to the question and also to the introduction of any testimony or evidence in behalf of the plaintiff in this action, on the ground and for the reason that the same is not admissible under the pleadings, that the complaint herein does not state a cause of action."

The plaintiff's complaint alleged that John Erickson on July 22, 1911, was the owner in fee simple of the real estate in question; that at that time and for several years prior thereto said John Erickson and plaintiff were husband and wife and resided on said land, and that the same was their homestead and claimed by plaintiff as such; that the same did not comprise more than 160 acres and was not worth more than $5,000; that on or about July 22, 1911, "this plaintiff and said John Erickson and the defendant entered into an agreement wherein and whereby the said defendant promised and agreed to pay to this plaintiff the sum of $5,000 for the release of her homestead interest in and to the lands above described; and it was expressly agreed by and between plaintiff, her husband, and the defendant that the full sum of $5,000 should be paid to the plaintiff, and the defendant promised and agreed to pay said sum of five thousand dollars ($5,000) to plaintiff, after deducting the amount of mortgages of record against said land, with the consent and at the request of said husband of plaintiff, and that at said time this plaintiff refused to sign the deed hereinafter mentioned, unless the sum of $5,000, after deducting the amount of mortgages of record against said lands, was paid directly to her, and she signed and executed the deed hereinafter mentioned in reliance upon said promises of defendant to pay her said sum." That there were mortgages of record against the premises, aggregating $2,800 and no more; that there is due to the plaintiff from defendant as and for the purchase price of said land, and by reason of the premises set forth, $2,200, with interest, which defendant has failed to pay.

It will be observed that the question of the sufficiency of the complaint was not even raised by a specific objection to the introduction of any evidence under the complaint, but such insufficiency was merely urged

as one of several grounds of objection to a preliminary question. The particular grounds of attack upon the complaint were not specified. The practice of attacking pleadings by objections to evidence should not be encouraged. 31 Cyc. 760. We are all agreed that the complaint in this case was not vulnerable to the objection made.

2. Defendant next contends that the complaint was insufficient and evidence inadmissible thereunder, for the reason that the contract sued upon was void under the statute of frauds. This question was not raised either by answer or objection to evidence, but was first presented in the motion for a directed verdict. Defendant's answer was a general denial followed by an allegation that the defendant "purchased the property described in the complaint from John Erickson, the owner thereof, for the consideration of $4,000, which consideration defendant has paid in full, and that defendant is not indebted to the plaintiff in any sum whatsoever."

There is a great conflict of authority regarding the proper mode of taking advantage of the statute of frauds. Numerous authorities hold that a defendant, in order to have the benefit thereof, must raise this defense by specific allegations in his answer. 9 Enc. Pl. & Pr. 705 et seq.; 20 Cyc. 313, 315; Sutherland, Code Pl. § 533. Other authorities hold that the defense is available under a general denial, or a denial of the contract, especially when the complaint declares generally on a contract within the scope of the statute of frauds, without alleging whether or not it is in writing. 20 Cyc. 314; Sutherland, Code Pl. § 533; 9 Enc. Pl. & Pr. 709; Jordan v. Greensboro Furnace Co. 78 Am. St. Rep. 644, and note (126 N. C. 143, 78 Am. St. Rep. 644, 35 S. E. 247). Where the defence is available under a general denial, it seems that timely objection should be made to evidence of the oral contract, on the ground that it is incompetent under the statute of frauds. 9 Enc. Ev. 122; 20 Cyc. 308, 320, 29 Am. & Eng. Enc. Law, 811.

The authorities, however, are all agreed that the statute of frauds is a personal defense, and can be interposed only by the parties to the contract, or their representatives and privies (29 Am. & Eng. Enc. Law, 807); that a party entitled to invoke the protection of the statute may waive it, if he desires to so do (29 Am. & Eng. Enc. Law, 811); and that a failure to invoke its protection in some appropriate manner

in the trial court will be deemed a waiver of the right to invoke it. The authorities also agree that the defense must be raised. It does not raise itself. Nor can it be urged for the first time on appeal to this court. Schuyler v. Wheelon, 17 N. D. 161, 165, 115 N. W. 259.

3. It is·unnecessary for us, however, to determine which is the better mode of raising the statute of frauds, and whether it can be raised for the first time by a motion for a directed verdict, because we are satisfied that plaintiff's cause of action herein was not barred by the statute of frauds. The verbal agreement upon which plaintiff's cause of action is predicated was fully performed by her in compliance with its terms. Defendant received an instrument of conveyance executed and acknowledged by plaintiff and her husband. This instrument was concededly sufficient to effect a release of plaintiff's homestead interest in the premises. Defendant not only received, but accepted, such instrument of conveyance, and caused the same to be recorded, and afterwards proceeded to exercise dominion of ownership over the premises in question.

"The statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, *and the party so performing may sue upon the contract in a court of law. He is not compelled to abandon the contract and sue in equity or upon a quantum meruit.* Particularly is this said to be true where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, *and the part remaining to be performed is merely the payment of money* or the performance of some act the promise to do which is not required to be put in writing. . . . Thus, where lands have been actually conveyed and possession taken in accordance with the terms of a contract within the statute, the vendor may recover the consideration agreed upon." 29 Am. & Eng. Enc. Law, 2d ed. 832.

"Performance of an agreement, void by the statute of frauds, and acceptance of such performance, is an answer to the statute." Swain v. Seamens, 9 Wall. 254, 19 L. ed. 554.

"Where an oral promise relating to the transfer of real property has been performed, the contract of which it is a part is no longer within the statute of frauds by reason of such promise, and accordingly an action will lie for a breach thereof." 20 Cyc. 293.

"The statute is no bar to an action for the price of land actually

conveyed where the deed has been accepted or title has otherwise passed, although the grantor could not have been compelled to convey, or the grantee to accept, a deed, because the contract was oral, and the same is true of an oral agreement to assign the interest of a purchaser under an executory contract of sale; when the title has passed to the assignee he must pay the assignor the price agreed on. The rule holds good when the consideration for the conveyance is not money but a promise of the grantee; an action will lie for the breach of such promise if it is not itself within the statute." 20 Cyc. 294.

"Where a conveyance has been executed and accepted in pursuance of an oral contract for the sale of land, an action may be maintained for a breach of the promise to pay the contract price. The statute of frauds does not apply to such an executed agreement." Niland v. Murphy, 73 Wis. 326, 41 N. W. 335.

In considering a similar question in Galley v. Galley, 14 Neb. 174, 15 N. W. 318, the supreme court of Nebraska said: "It is true that the contract was oral, and, in part, related to a conveyance of land. The action, however, was not brought to enforce either the conveyance or an acceptance of the conveyance agreed upon. . . . This action was merely to recover from Springer Galley damages for refusing to pay for that which he had received. He had agreed to make payment by a delivery of the team and harness, but, refusing to do so, he became liable to an action for damages. *The statute of frauds will not enable one who has accepted a conveyance of land to escape from paying for it simply because the contract of purchase rested in parole.*"

In Hess v. Fox, 10 Wend. 436, in discussing a similar question, the court said: "No question can arise here as to the validity of the agreement to sell. That was performed, and the remaining part was to pay over money, supported by the consideration of land conveyed to the promisor." See also Bourne v. Sherrill, 143 N. C. 381, 118 Am. St. Rep. 809, 55 S. E. 799; Brown v. Hobbs, 147 N. C. 73, 60 S. E. 716.

4. Appellant next contends that the parol agreement was superseded by the deed. In support of this contention appellant cites § 5889, Compiled Laws 1913, which reads: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Appellant asserts that

inasmuch as John Erickson was the record owner of the land, and the deed recited payment of the consideration, stated therein, to "the parties of the first part" (John Erickson and his wife), such recital is binding upon the plaintiff, and she cannot be permitted to show that the greater portion of the consideration was in fact to be paid to her.

Our sister state (South Dakota) has a statutory provision identical in language with § 5889, Compiled Laws 1913. And in considering the effect and proper application thereof, the supreme court of South Dakota, in De Rue v. McIntosh, 26 S. D. 42, 47, 127 N. W. 532, said: "This provision of our Code embodies the common-law rule upon the subject of written contracts, and while 'the execution of a contract in writing, whether the law requires it to be written or not, supersedes all of the oral negotiations or stipulations, concerning its matter, which preceded or accompanied the execution of the instruments,' nevertheless, as contended by the appellant, there are exceptions to the rule. And one of the exceptions seems to be that agreements or representations made prior to the written contract under which the party was induced to sign the contract may be shown; in other words, where the parol contemporaneous agreement was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and where he executed the written contract upon the faith of the parol contract or representations, such evidence is admissible. Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512; Thomas v. Loose, 114 Pa. 35, 6 Atl. 326; Dicken v. Morgan, 54 Iowa, 684, 7 N. W. 145; Cullmans v. Lindsay, 114 Pa. 166, 6 Atl. 332; Barnett v. Pratt, 37 Neb. 352, 55 N. W. 1050; Ayer v. R. W. Bell Mfg. Co. 147 Mass. 46, 16 N. E. 754; Davis's Sons v. Cochran, 71 Iowa, 369, 32 N. W. 445; 9 Enc. Ev. 350; Ferguson v. Rafferty, 128 Pa. 337, 6 L.R.A. 33, 18 Atl. 484; Hines v. Willcox, 96 Tenn. 148, 34 L.R.A. 824, 54 Am. St. Rep. 823, 33 S. W. 914; Walker v. France, 112 Pa. 203, 5 Atl. 208." See also Bourne v. Sherrill, 143 N. C. 381, 118 Am. St. Rep. 809, 55 S. E. 799; Brown v. Hobbs, 147 N. C. 73, 60 S. E. 716.

5. The rule is also well settled that the acknowledgment of the receipt of a consideration in a deed or other written contract is not conclusive, but it may be shown by parole that the consideration agreed upon has not been paid; or that a consideration greater or lesser than, or different from, that expressed in the deed was in fact agreed upon.

" 'In an action for the consideration money expressed in a deed for lands sold, the clause acknowledging the receipt of a certain sum of money as the consideration of the conveyance or transfer is open to explanation by parol proof. The only effect of this consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration. For every other purpose it is open to explanation, and may be varied by parol proof.' Parol evidence is also admissible to show an additional consideration not inconsistent with the deed." Devlin, Deeds, 3d ed. § 823.

"It may also be shown by parole, in contradiction of the acknowledgment of the receipt of the consideration, that the grantee, as a part of the consideration, made a verbal promise that he would pay the grantor whatever he might receive over a specified amount upon the resale of the land, and an action of assumpsit will lie to recover the excess." Devlin, Deeds, 3d ed. § 826.

"It is held by an uncounted multitude of authorities that the true consideration of a deed of conveyance may always be inquired into, and shown by parol evidence, for the obvious reason that a change in or contradiction of the expressed consideration does not affect in any manner the covenants of the grantor or grantee, and neither enlarges nor limits the grant." 17 Cyc. 653. See also Johnson v. McClure, 92 Minn. 257, 99 N. W. 893, 2 Ann. Cas. 144, and extended note on page 146; Cummings v. Putnam, 19 N. H. 569; Musselman v. Stoner, 31 Pa. 265; Pearson v. Bank of Metropolis, 1 Pet. 89, 7 L. ed. 65; Carr v. Dooley, 119 Mass. 294; Cole v. Hadley, 162 Mass. 579, 39 N. E. 279; Paul v. Owings, 32 Md. 402; Sivers v. Sivers, 97 Cal. 518, 32 Pac. 571; Koogle v. Cline, 110 Md. 587, 24 L.R.A.(N.S.) 413, 73 Atl. 672; Velten v. Carmack, 23 Or. 282, 20 L.R.A. 101, 31 Pac. 648; Fowlkes v. Lea, 84 Miss. 509, 68 L.R.A. 925, 36 So. 1036, 2 Ann. Cas. 466; Shehy v. Cunningham, 81 Ohio St. 289, 25 L.R.A.(N.S.) 1194, 90 N. E. 805; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125; 6 Am. & Eng. Enc. Law, 767; Jones, Ev. § 469; Washb. Real Prop. 6th ed. §§ 2281, 2283; Gage v. Cameron, 212 Ill. 146, 72 N. E. 204.

Not only may a grantor maintain an action for the whole or any part of the unpaid purchase price, and in such action show the true considera-

tion for the deed, and that such consideration remains unpaid in whole or in part, but a person not a party to the deed may in a proper case maintain such suit, and show by parole that the grantee retained a part of the consideration money under an agreement with the grantor to pay such moneys to such third person.

"So, it may be shown by parol evidence for the purpose of creating a resulting trust that the consideration price was not paid by the grantee, but by a third person. Such evidence does not tend to contradict the deed. The recital of payment may state that the consideration was paid by the grantee, but it does not state that it was his money. This is a fact outside of the conveyance." Devlin, Deeds, 3d ed. § 826.

"The grantor may show, notwithstanding the acknowledgment of payment of the consideration in the deed, that the grantee retained a part of the money to be applied to the grantor's use. So, it may likewise be shown that the part of the money retained by the grantee was to be paid by him to a third person for the grantor's benefit. So, it is permissible to show by parol evidence that the grantee has retained a part of the consideration money, under an agreement to pay the note of the grantor to a third person, and, in an action for money had and received to his use, such third person may recover the amount of the note and interest." Devlin, Deeds, 3d ed. § 828.

"It may be shown, although not expressed in a deed, that the grantee agreed as part of the consideration to pay or assume an existing encumbrance, *even though the deed contains a covenant of warranty against encumbrances,* for such evidence does not destroy the warranty, but leaves it in full force and effect except as to the specific encumbrance, the payment or assumption of which was a part of the consideration." 17 Cyc. 655.

In Moore v. Booker, 4 N. D. 543, 549, 62 N. W. 607, this court held that even though an existing mortgage was, by recital in the deed, expressly excepted from the covenant of warranty, still it might be shown by parole that the grantee agreed as a part of the consideration to assume the payment of such mortgage. The court said that the rule of evidence that a written contract cannot be varied, contradicted, or added to by parole had no application, and that "the contract by which a grantee assumes the payment of existing encumbrances is separate and distinct from the conveyance. It may be, and often is, embodied in

the deed; but it may be by separate writing, or it may rest entirely in parole." See also McDonald v. Finseth, 32 N. D. 400, L.R.A.1916D, 149, 155 N. W. 863.

In considering the same question in the case of Miller v. Kennedy, 12 S. D. 478, 482, 81 N. W. 906, the supreme court of South Dakota said: "Counsel insist that it was error to allow respondent Kennedy and the defendant Overholser to testify that the latter, as part consideration for the premises, orally agreed to pay the mortgage indebtedness, and it is urged that such proof tended to vary the terms of the deed, and contradict the consideration expressed therein. To us it seems clear that the contract to assume and pay the mortgage was wholly independent of anything contained in the deed, the consideration of which is always open to inquiry so long as proof with reference thereto in no manner tends to destroy its validity, and the testimony was properly admitted.

"Surely, such an agreement, fully performed by the grantor, who has executed a deed and surrendered possession to the grantee, is not within the statute of frauds, requiring it to be in writing, nor is it an agreement to pay the debt of a third person, but wholly an original undertaking, relating to the consideration of the conveyance, and need not be in writing."

In Calvert v. Nickles, 26 S. C. 304, 2 S. E. 116, the father of the plaintiffs conveyed to defendant a tract of land. The plaintiffs claimed that the consideration for said deed, in part, was the agreement of defendant to pay the sum of $100 to each of the plaintiffs (grantor's four children). The court held that such moneys might be recovered in an action at law upon the promise to pay. The court said: "The doctrine that parol evidence is not admissible to contradict or alter a written instrument is well established,—no doubt about this; but we do not see that this rule has been violated here. The purpose of the plaintiffs in introducing the testimony objected to was not to alter, add to, or contradict the deed, or to change its character in any way; *it was simply to show the manner and to whom the purchase money was to be paid.* This under the case of Curry v. Lyles, 2 Hill, L. 404, we think was unobjectionable."

It is conceded by both parties to this lawsuit that the deed was executed and delivered by the plaintiff and her husband to the defendant;

33 N. D.—14.

that defendant accepted the same, and caused it to be recorded, and subsequently assumed control of and exercised ownership over, the premises conveyed by the deed. Both parties admit that this deed was executed and delivered pursuant to a certain oral agreement concerning the manner of payment of the consideration. Both parties contend that the recital in the deed regarding the consideration and the payment thereof is not in accordance with the real facts. The plaintiff claims that the defendant agreed to pay $5,000 in all, as was stated in the deed, and that he has failed to pay that portion of such sum which he agreed to pay to her. The defendant, on the other hand, claims that the consideration was not $5,000, as stated in the deed, but only $4,000, and consisted not of money, but the assumption by defendant of certain debts against John Erickson, and the promise on the part of the defendant, (1) to advance $300 to Erickson; (2) to reconvey the premises to Erickson upon certain conditions. Plaintiff's version is certainly no more inconsistent with the recitals of the deed, than the version of defendant. According to plaintiff's testimony she executed the deed in reliance upon defendant's promise to pay her so much money. This promise relates to the payment of the consideration, and formed the inducement which caused her to execute the deed. "To deny the admission of evidence in such case, if relevant to the issue made by the pleadings, would (in effect) be to allow one of the parties to induce another to enter into the engagement under false representations, and to aid him to enforce it against his adversary, notwithstanding the fraud practised upon him by holding out to him the fraudulent inducement."

Under the laws of this state, "the homestead of a married person cannot be conveyed or encumbered, unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife." Comp. Law, 1913, § 5608. Defendant desired to purchase the land involved. Plaintiff had a homestead interest therein. The only way defendant could acquire title was by a conveyance executed and acknowledged by both John Erickson and the plaintiff. A deed executed by John Erickson alone would have been a nullity. A sufficient deed of conveyance was executed, acknowledged, and delivered. Defendant received what he desired,—a conveyance of the homestead of John Erickson by a valid deed free and clear of all claims of plaintiff to a homestead interest therein. Plaintiff does not assert any right or

title in derogation of the deed, nor seek to defeat its purpose or effect. She is perfectly willing that defendant should retain the premises and enjoy the benefit of the estates conveyed and released to him by the grantors in the deed. All she asks is that defendant pay the consideration he agreed to pay for a conveyance and release of such estates.

6. While not argued in appellant's brief, it was contended on oral argument that the plaintiff by executing (jointly with her husband) a deed containing covenants of seisin and warranty, became estopped to assert that she joined therein for the purpose of releasing her homestead right. This question was not presented in the trial court, either by answer or otherwise. The general rule is that an estoppel by deed, in order to avail the defendant, must be pleaded, where there is an opportunity to do so.

8 Enc. Pl. & Pr. 9; 8 Standard Enc. Proc. 693; Schofield v. Cooper, 126 Iowa, 334, 102 N. W. 110; Gilson v. Nesson, 208 Mass. 368, 94 N. E. 471; Newport Pressed Brick & Stone Co. v. Plummer, 149 Ky. 534, 149 S. W. 905; Johns v. Clother, 78 Wash. 602, 139 Pac. 755; Harle v. Texas Southern R. Co. 39 Tex. Civ. App. 43, 86 S. W. 1048; Grooms v. Morrison, 249 Mo. 544, 155 S. W. 430; Conrow v. Huffine, 48 Mont. 437, 138 Pac. 1094; Fritz v. Mills, 12 Cal. App. 113, 106 Pac. 725; Parliman v. Young, 2 Dak. 184, 4 N. W. 139, 711; Borden v. McNamara, 20 N. D. 225, 127 N. W. 104, Ann. Cas. 1912C, 841.

In this case plaintiff's complaint expressly referred to the deed as the instrument executed, acknowledged, and delivered by plaintiff to the defendant in compliance with the verbal agreement. In addition to the allegations heretofore set forth, the complaint also contained the following: "That thereafter and on the 22d day of July, 1911, in reliance on the promise and agreement of defendant, and the premises hereinbefore set forth, this plaintiff did make, execute, acknowledge, and deliver to the defendant her certain warranty deed for the land above described, which said deed was filed for record in the office of the register of deeds in and for Burke county, North Dakota, on the 22d day of July, 1911, and recorded in book 6 of deeds at page 64, which said deed recites a consideration of $5,000, and is by reference made a part of this complaint." Hence, defendant certainly had an opportunity to plead the estoppel, if he intended to rely thereon as a defense,

but he failed to do so, and it seems clear that he cannot be permitted to assert such defense for the first time in the appellate court.

7. But even if such defense had been pleaded and presented in the court below, it would not bar plaintiff's right of recovery, under the facts in this case.

Bouvier (Bouvier's Law Dict. Rawle's 3d Rev.), defines estoppel: *"The preclusion of a person from asserting a fact, by previous conduct inconsistent therewith,* on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question."

And estoppel by deed: "Such as arises from the provisions of a deed. It is a general rule that a party to a deed is estopped to deny anything stated therein which has operated upon the other party; as, the inducement to accept and act under such deed."

Henderson, Ch. J., speaking for the court in Den ex dem. Brinegar v. Chaffin, 14 N. C. (3 Dev. L.) 108, 22 Am. Dec. 711, said: "Recitals in a deed are estoppels when they are of the essence of the contract; that is, where, unless the facts recited exist, the contract, it is presumed, would not have been made."

In Gjerstadengen v. Hartzell, 9 N. D. 268, 277, 81 Am. St. Rep. 575, 83 N. W. 230, this court said: "It is well settled that 'a party setting up an estoppel must always show as an essential part of his case that he will be subjected to loss if he cannot set up the estoppel. . . . An estoppel was never intended to work a positive gain to a party, but its whole office is to protect him from a loss which, but for the estoppel, he could not escape.' "

In Haugen v. Skjervheim, 13 N. D. 616, 102 N. W. 311, this court stated the rule thus: "An equitable estoppel by deed or *in pais* is not created or enforceable unless there has been a change in the situation of one of the parties in reliance on the deed or statements, followed by damage."

In the case at bar defendant was not misled by any recitals in the deed. He had personal knowledge of all the facts. He knew that John Erickson was the record owner, and that the plaintiff only had and claimed a homestead interest. Possessed of this knowledge he drew a deed with his own hands. This deed he presented to plaintiff and her husband for execution. Plaintiff's execution and acknowledgment

thereof was necessary to release her homestead interest, and give any validity to the instrument as a conveyance. Plaintiff and her husband (so she testified and so the jury found) executed and acknowledged the deed, and delivered the same to the defendant in consideration of $5,000, of which $150 was to be paid to John Erickson, $2,800 and accrued interest to be paid to the mortgagees holding mortgages on the land, and the remainder ($1,553.01), to be paid to the plaintiff. Plaintiff does not seek to impeach defendant's title to the premises, or set up any title thereto inconsistent with the deed. It is conceded she had a homestead interest. It is also conceded that, under the laws of this state, a homestead can be conveyed only by an instrument executed and acknowledged both by the husband and wife. It is undisputed that plaintiff, together with her husband, executed and acknowledged such instrument, and thereby released to defendant her homestead interest. Defendant, by virtue of such instrument, became the owner of the premises, free and clear of plaintiff's homestead interest. Without her execution and acknowledgment thereof his deed would have been a nullity. If the facts are as plaintiff claims (and the jury found), then defendant has not paid the consideration he agreed to pay. Plaintiff merely asks that he pay such consideration in the manner which, and to the person to whom, he agreed to pay the same. It is difficult to see how, under the facts in this case, an estoppel can exist or be invoked in favor of the defendant to defeat plaintiff's right of recovery.

8. Appellant next asserts that the court erred in overruling defendant's objections to three questions asked plaintiff by her counsel on redirect examination.

The questions, objections, rulings, and answer were as follows:

Q. This oldest child, can he read?

Objected to as incompetent, irrelevant, and immaterial, not proper redirect examination.

No answer.

No ruling.

Q. He does not know anything, does he?

Objected to as incompetent, immaterial, not proper redirect examination, not tending to prove any facts in this case and prejudicial.

Overruled. Exception.

A. No.

Q. Has he ever been able to help himself in any particular?

Objected to as incompetent, palpably irrelevant, and immaterial, and highly objectionable.

Overruled.

Exception.

A. No.

Appellant's counsel argues that the admission of this testimony was prejudicial error. The principal defect in counsel's argument is that it ignores the fact that the testimony relative to plaintiff's children, their number, ages, and educational qualifications, was first elicited by defendant's own counsel on cross-examination of the plaintiff. Upon the direct examination of plaintiff, her counsel asked her the following question: "Q. How many children were there?" Defendant's counsel objected to this question as immaterial and not tending to prove any issues in the case. The objection was sustained, and the question remained unanswered. This was the only question asked by plaintiff's counsel regarding the children upon plaintiff's direct examination. But during plaintiff's cross-examination, defendant's counsel went fully into the matter of the children, their ages, and ability to talk, read, and write English, and the questions upon which error is predicated were asked by plaintiff's counsel upon redirect examination immediately following the cross-examination. We quote from the cross-examination and redirect examination of the plaintiff as contained in the record:"

Cross-examination by defendant's counsel.

Q. Didn't Mrs. Rouse write letters to Mr. Sinkler at your request for you about this case?

A. She wrote, but it was me that wrote it, but I cannot understand English, so I have to have somebody help me to say right or wrong.

Q. Who did you get to write the letters?

A. I had Mrs. Rouse to write it.

Q. You cannot understand English at all, you cannot scarcely speak it?

A. I can talk some, but I cannot read no English.

Q. Can your boys speak English?

A. Yes, some, but they are not very good.

Q. Can they read English?

A. Some can.

Q. Can they write English?

A. Some of them.

Q. How many children living at home with you?

A. I got eight.

Q. How old is the oldest one?

A. He is twenty-five.

Q. At home?

A. Yes.

Q. How old is the next one at home?

A. The next fourteen.

Q. The next one?

A. The next one,—the boy is nineteen.

Q. Twenty-five—nineteen?

A. Yes and fourteen and the baby is thirteen.

Q. These children all born in this country?

A. No.

Q. Where were they born?

A. Born in Minnesota.

Q. I mean in the United States, were they all born in the United States?

A. Oh, yes.

Q. All go to school?

A. No, they don't go to school.

A. Besides him, or the nineteen year old?

A. Twenty-five don't go to school either.

Q. Never did?

A. No.

Q. Did the nineteen?

A. *No, he started, but he could not talk and he could not read.*

Q. How about the fourteen year old?

A. She can read and write.

Q. You had several children who could write letters in English?

A. Yes, but they are young and they don't understand such a thing as that.

Re-direct Examination.

By Mr. Sinkler:

Q. This oldest child, cannot he write?

Objected to as incompetent, irrelevant, and immaterial, not proper redirect examination, and immaterial.

Q. He does not know anything, does he?

Objected to as incompetent, immaterial, not proper redirect examination not tending to prove any facts in this case and prejudicial.

Overruled. Exception.

A. No.

Q. That twenty-five year old boy that is at home?

A. Yes.

Q. Has he ever been able to help himself in any particular?

Objected to as incompetent, palpably irrelevant, and immaterial, and highly prejudicial, and not tending to prove any of the facts in this case, and not admissible under the pleadings.

Overruled. Exception.

Objected to as not proper redirect examination.

Overruled. Exception.

A. No.

Q. Can he write?

A. No.

Q. Can he read?

A. No.

The above contains every question regarding the children, asked by plaintiff's attorney, which plaintiff was permitted to answer, or did answer. Can it be seriously contended (in view of the preceding cross-examination), that the admission over objection of plaintiff's answers to these two questions constituted prejudicial error, or error at all? We think not. This subject was opened up on cross-examination by defendant's counsel. Where new matter is brought out on cross-examination, the adverse party is entitled as a matter of right to re-examine the witness regarding the new matter so brought out. Jones, Commentaries on Evidence, § 871. Although of course such re-examination must be confined to proper limits, and the trial judge necessarily has a wide discretion in determining the extent thereof. Obviously plaintiff's redirect examination was not outside the proper scope.

9. The proposition next argued is that the court erred in sustaining objections to certain questions propounded by defendant's counsel to the

witness Johnson. This argument is predicated upon the following specification of error: "The court erred in sustaining the objections to all questions on page 140, statement of case." We are agreed that this specification is too general to require consideration by this court. Willoughby v. Smith, 26 N. D. 209, 144 N. W. 79; 3 C. J. §§ 1519 et seq. See also 38 Cyc. 1405; Northern Grain Co. v. Pierce, 13 S. D. 265, 83 N. W. 256; Schmidt v. Carpenter, 27 S. D. 412, 131 N. W. 723, Ann. Cas. 1913D, 296.. But an examination of the record convinces us that no error was committed by the trial court in the rulings complained of.

Johnson was called by the defendant to impeach plaintiff's witness Mrs. Rouse.

As a foundation for such impeachment, Mrs. Rouse was asked, and answered the following questions on her cross-examination:

Q. Didn't you tell Mr. Pete Johnson, the man who runs the First State Bank of Lignite, that if he could get that land for you from Wiper that you would take it at $4,000?

A. We told him we would give him a reasonable amount up to $5,000 for that land, but not for me.

Q. That is what you told Johnson?

A. Yes.

Q. That is what you told Johnson?

A. Yes.

Q. Didn't you tell him also you would only pay $4,000, and if Wiper would let you have it for that amount it would stop this lawsuit?

A. I did not.

Q. Did you ever at any time tell Pete Johnson that, if he could get the farm from Mr. Wiper at any price, this lawsuit would stop?

A. No, never did.

Peter Johnson was subsequently called as a witness by defendant, apparently for the purpose of impeaching Mrs. Rouse's testimony regarding the matter referred to in her cross-examination.

We quote from his testimony as contained in the record:

Q. Did you hear the testimony of Mrs. Rouse yesterday relative to having you see Mr. Wiper for the purpose of purchasing this Erickson quarter from him at a figure ranging any place between $4,000 and $5,000?

Objected to as incompetent, irrelevant, and immaterial, improper impeachment, being upon a collateral matter.

*Defendant's Attorney:—It is not offered for impeachment.*

Overruled. Exception.

A. I did.

Q. Did you ever talk with Mrs. Rouse relative to buying the Erickson land for her from Mr. Wiper?

Objected to as no foundation is laid, incompetent, no foundation laid in the question which was asked the witness Rouse when she was upon the witness stand, no time and place being fixed at which the conversation had taken place, and in order to impeach the witness, the time, place, and occurrence must be particularly called to the attention of the witness sought to be impeached, and on the further ground it is an attempted impeachment upon a collateral matter.

*Defendant's Attorney:—It is not offered for impeachment.*

Sustained.

Q. Mr. Johnson, did Mrs. Rouse in the conversation to which she testified to while on the witness stand as having had with you relative to you purchasing the John Erickson quarter from Mr. Wiper for her, authorize you to pay from $4,000 to $5,000 for it?

Objected to as incompetent, irrelevant, and immaterial, and on the same ground as urged in the last objection.

Overruled. Exception.

A. She did not.

Q. What did she tell you to offer for that quarter section?

Same objection.

Overruled. Exception.

A. $4,000.

Q. At the time you were having this talk with her how long did you talk this matter over?

A. I should say—about two hours.

*      *      *      *      *      *      *      *      *      *      *      *      *      *      *      *      *

Q. Did she go into the details between the Ericksons and Wiper in talking to you about this matter?

A. Yes.

Q. When she said she wanted you to get it for $4,000, did she say anything about letting them know who was buying it?

Objected to as incompetent, immaterial, not an impeaching question,

and not binding on the plaintiff, no foundation is laid, and, if for the purpose of impeachment, it is on a collateral matter.

*Defendant's Attorney:—It is not for the purpose of impeachment.*

Sustained. Exception.

Q. During the talk had there, was there anything said by Mrs. Rouse to you relative to the, to this lawsuit between Mrs. Erickson and Mr. Wiper being settled if you could buy the land from Wiper for her for $4,000?

Objected to as incompetent, and on the same grounds as last stated, and an attempt to inject into the record, matter that is immaterial, and no foundation is laid for it, and not a proper impeaching question, it does not put to the witness the substance of the question that was asked of the witness.

Sustained. Exception.

Q. Mr. Johnson, in that conversation between you and Mrs. Rouse wherein she asked you to purchase the land from Mr. Wiper for $4,000, did she state to you in substance that, in the event you could purchase this land from Mr. Wiper for him, that it would settle this lawsuit, and in the event that you could not get the land for her, and he refused and failed to sell it to her for $4,000 that the lawsuit would go on, and that Mrs. Erickson would get $5,000 out of him for it?

Objected to on same ground as stated in prior objection.

Sustained. Exception.

The error assigned and argued purports to be predicated upon the court's rulings in sustaining objections to the last two questions set out above. No complaint is made of the other rulings. It is conceded that plaintiff was not present at the time the conversation between Mrs. Rouse and Johnson took place. If Johnson's testimony was admissible at all, it could only be on the theory that it impeached Mrs. Rouse, by showing (1) her bias or interest in the lawsuit; (2) a variance between her statements at the time of the conversation, and her testimony. But defendant's counsel expressly denied that such testimony was offered for impeachment purposes. No intimation is given of any other purpose for which it could possibly be admissible. In spite of this fact, however, Johnson was permitted to state his version of the conversation at some length. Defendant has no reason to complain of the rulings under consideration.

10. Appellant next complains of the court's rulings in striking out the answers given by the defendant, Wiper, to two certain questions.

The questions and answers were as follows:

Q. Did you, at any time, have any conversation of the kind or character that you were to give $5,000 for it, and that the mother was to have all of it but $150, which was to go to the father?

A. No, when she was on the stand was the first time I heard her mention the transaction.

Moved to strike out the answer as not responsive.

The Court: Stricken out.

Q. Was there an understanding there that she was to get all over $2,800 except $150 that were going to John Erickson?

Exception.

A. No, there was $300 to go to John Erickson.

Moved to strike out answer as not responsive.

Exception.

The Court: Stricken out.

It is not only the right, but under certain circumstances it becomes the duty, of the trial court to strike out irresponsive answers. The questions under consideration obviously required either "yes" or "no" for answer. The witness did not so answer them. It is conceded that the greater portions of the answers were properly stricken. Appellant's sole contention is that the word "no" in each answer was responsive, and that therefore it was error to strike out the entire answers. The trial judge necessarily must be vested with considerable discretion in, and control over, the examination of witnesses, and we are not prepared to say that he oversteps the limits of his authority or discretion by striking out the entire answer, where the greater portion thereof is irresponsive. In such case counsel has ample opportunity to obtain a proper answer, by repeating the question to the witness.

11. But in this case defendant could not possibly be prejudiced by the rulings complained of, as he testified fully upon the same matter elsewhere in his testimony. Defendant not only fully denied any such conversation or understanding referred to in the two questions, but testified positively to an entirely different conversation and understanding. Defendant's negative answers to the two questions under consideration would in reality have added nothing to his testimony. It was at

the most a repetition of his testimony on this question. Hence, the rulings were not prejudicial, as the rule is well settled that the error, if any, in striking out an answer as irresponsive is cured where the witness elsewhere in the testimony has testified or is permitted to testify to the substance of the answer stricken. 38 Cyc. 1460, 1462.

12. Defendant also assigns error upon the denial of the motion for a directed verdict. No particular argument is presented in support of this proposition in appellant's brief, but it is stated that appellant's argument with respect to the sufficiency of the complaint, the statute of frauds, and the insufficiency of the evidence, covers this assignment of error. An examination of the motion for a directed verdict shows that it is based almost exclusively upon the alleged insufficiency of the complaint. The only part of the motion which attempts to raise the sufficiency of the evidence or the statute of frauds is as follows: "That the evidence shows that the said plaintiff never at any time executed and delivered to the defendant a conveyance of said land other than as indicated by the deed joined in by this plaintiff with her husband, John Erickson, which is in evidence here. Exhibit '1,' the contract as set forth by plantiff in the complaint, being an oral contract, and the statute of this state providing that all contracts for the sale of land shall be in writing, and therefore under the evidence the plaintiff's contract was within the statute of fraud and void. For the further reason that the plaintiff has failed to comply with the terms of the agreement pleaded in the complaint, the statute of this state providing that the only manner in which the homestead can be conveyed by an instrument signed by the husband and wife jointly, and that no such instrument has been pleaded in plaintiff's complaint."

It is unnecessary for us to devote any further time or space to a consideration of this assignment, as appellant's counsel virtually concedes that this assignment rests upon and will be controlled by a decision of the questions of the sufficiency of the complaint and the statute of frauds, and in view of the conclusion we have reached, with reference to these assignments, it follows that defendant's assignment of error predicated upon the denial of the motion for a directed verdict must also fall.

13, 14. The next grounds on which a reversal is predicated are cer-

tain remarks alleged to have been made by plaintiff's counsel in his argument to the jury.

The record on which the assignment of error is based is as follows:

Defendant's Attorney: The defendant at this time takes exception to the remarks of counsel to the jury wherein he stated to the jury, "I will tell you what I think about it. I think the defendant never intended to fulfil his promise." Overruled. Exception.

Defendant's Attorney: Object to the remarks to the jury as highly prejudicial and hearsay wherein counsel states it is not to be wondered at, "this gang from Bowbells are all here telling the same story for the purpose of robbing this woman," as not warranted by the evidence.

Overruled. Exception.

Defendant's Attorney: Exception to the remarks of counsel wherein he states that defendant wanted to get the plaintiff into Canada, and that the reason for wanting to get her there was to get her out of reach so he would not have a lawsuit, or words to that effect, as incompetent, as not within the evidence and highly prejudicial.

Overruled. Exception.

Defendant's Attorney: Exception to the remarks of counsel, "She could have the rents and profits of that land for a year after it had been foreclosed," as not within the evidence and contrary to the statute in this state.

Overruled. Exception.

A party asserting error has the burden of proving it. And as was said by this court in Davis v. Jacobson, 13 N. D. 430, 101 N. W. 314, he has the burden of preparing and presenting a record showing such error affirmatively. See also State v. Gerhart, 13 N. D. 663, 102 N. W. 880; State v. Scholfield, 13 N. D. 664, 102 N. W. 878. This rule applies with more than usual strictness where error is predicated on rulings upon matters resting largely within the trial court's discretion. An abuse of discretion will not be assumed, but must clearly be shown by the party asserting error. The party predicating error on improper argument must present a record showing: (1) The objectionable language used; (2) the objection made; (3) the court's ruling on the objection. Bradshaw v. State, 17 Neb. 147, 22 N. W. 361, 363, 5 Am. Crim. Rep. 499. In this case the record does not show the language used. It merely shows the objection and the court's ruling thereon.

This is clearly insufficient to permit a review. So far as this court knows, the conclusions of defendant's counsel as to what plaintiff's counsel said may have been entirely erroneous. There is no greater presumption that plaintiff's counsel misquoted the evidence in his argument, than that defendant's counsel misquoted the remarks of plaintiff's counsel in his objection. The trial judge knew. He overruled the objection. He said it was not well founded. For what reason we do not know. It might have been that the remarks were never made. The presumption is that the trial court's rulings were correct, and the burden is upon the appellant to show affirmatively by the record that the rulings were incorrect. If the rulings can be sustained on any ground, this will be done. Davis v. Jacobson, 13 N. D. 430, 432, 101 N. W. 314. Nor are we prepared to say that the argument of plaintiff's counsel, if made as assumed in the objections, would constitute prejudicial error.

In State v. Kent (State v. Pancoast) 5 N. D. 521, 559, 560, 35 L.R.A. 518, 67 N. W. 1052, wherein defendant was convicted of murder in the first degree, and the death penalty affixed, this court said: "It is not claimed in this case that there was a violation of any statutory limitations upon counsel. The objections are placed upon broader grounds, and, to support them, it must clearly appear that counsel have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the testimony. This rule was never intended to limit counsel in any manner that could injuriously affect his case upon the merits. He is allowed a wide latitude of speech, and must be protected therein. He has a right to be heard before the jury upon every question of fact in the case, and in such decorous manner as his judgment dictates. It is his duty to use all the convincing power of which he has command, and the weapons of wit and satire and of ridicule are all available to him so long as he keeps within the record. He may draw inferences, reject theories and hypotheses, impugn motives, and question credibility, subject only to the restriction that, in so doing, he must not get clearly outside the record, and attempt to fortify his case by his own assertions of facts, unsupported by the evidence. See Tucker v. Henniker, 41 N. H. 317; Brown v. Swineford, 44 Wis. 282, 28 Am. Rep. 582; Martin v. State, 63 Miss.

505, 56 Am. Rep. 812; Rolfe v. Rumford, 66 Me. 564; McDonald v.
People, 126 Ill. 155, 9 Am. St. Rep. 547, 18 N. E. 817, 7 Am. Crim.
Rep. 137.   But this matter is, and of necessity must be, largely within
the discretion of the trial court, and the action of the trial court should
be reversed only in cases of clear and prejudicial abuse of this discre-
tion."

In State v. Moeller, 24 N. D. 165, 169, 138 N. W. 981, this court,
speaking through Justice Burke, said: "This attorney, Mr. Sinkler, in
closing his remarks to the jury, used language of which defendant now
complains.   It will not be necessary to set much of it out in this opin-
ion, but the gist of the statement is as follows: 'A moloch who kills un-
born children for the sake of the almighty dollar,' 'professional abor-
tionist,' etc.   It is claimed that these statements are not supported by
evidence and prejudicial to the defendant.   .   .   .   In the heat of
combat something may be said or done that needs correction.   The trial
court is there for that purpose.   If the state's attorney makes remarks
such as the above, the defendant must make complaint at once, or the
trial court may conclude that they are not objectionable.   In the case
at bar no complaint was made to the trial court, because, as counsel
states, 'he did not care to interfere with the argument.'   Some attorneys
take swift advantage of the sympathy of the jury for anyone in trouble,
and use the remarks of the state's attorney as a basis for a 'fair-play'
appeal to the jury.   In the absence of complaint, the court may have as-
sumed that such was the intention of defendant's attorneys.   The mat-
ter is one largely in the discretion of the trial court, who heard all of
the argument, and heard and saw the possible provocation."

15. The next and last proposition argued by appellant is that the evi-
dence is insufficient to justify the verdict.   This argument is predi-
cated upon the following two specifications:

"(A).   The evidence is insufficient to establish the allegation of the
complaint that the defendant agreed to pay to the plaintiff five thousand
dollars ($5,000) or any other sum for the release of her homestead in-
terest in and to the real estate described therein.

(B).   The evidence conclusively shows that the entire transaction
relating to the sale of the real estate described in the complaint was had
by the plaintiff's husband and the defendant, and that the purchase price

to be paid therefor was four thousand dollars ($4,000) and further shows that the full amount has been paid."

These particular grounds of insufficiency of evidence were not mentioned in the motion for a directed verdict. Such motion was based upon entirely different, specific grounds, which we have already considered. The rule seems well settled that where a motion for nonsuit or a directed verdict is made, the appellate court will consider only the grounds urged in the trial court, and appellant will not be permitted to change them or to add others in the appellate court. First Nat. Bank v. Laughlin, 4 N. D. 391, 61 N. W. 473; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145; Woods v. Stacy, 28 S. D. 214, 132 N. W. 1007; Perkins v. Thorson, 50 Minn. 85, 52 N. W. 272; Earl v. Cedar Rapids, 126 Iowa, 361, 106 Am. St. Rep. 361, 102 N. W. 140; Morse v. Houghton, 158 Iowa, 279, 136 N. W. 675; Zeliff v. North Jersey Street R. Co. 69 N. J. L. 541, 55 Atl. 96, 14 Am. Neg. Rep. 393; W. B. Johnson & Co. v. Central Vermont R. Co. 84 Vt. 486, 79 Atl. 1095; Boyle v. Union P. R. Co. 25 Utah, 420, 71 Pac. 988; Pfau v. Alteria, 23 Misc. 693, 52 N. Y. Supp. 88. See also 3 C. J. § 800.

No motion for new trial was made. The question of insufficiency of the evidence now sought to be raised was therefore not raised in the trial court, and, hence, under the holding of this court in Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861, cannot be raised for the first time in the appellate court. But even if such question could be considered, it must be decided against appellant's contention.

The people in their Constitution have said that in cases like the one at bar, "the right of trial by jury shall be secured to all, and remain inviolate." (N. D. Const. § 7). They have, also, said that such causes shall be tried and determined in the district court (Const. § 103), and that the supreme court "shall have appellate jurisdiction only." (Const. § 86.) Therefore on appeal in a jury case this court reviews only the errors assigned upon the proceedings had in the trial court. Thompson v. Cunningham, 6 N. D. 426, 430, 71 N. W. 128; State v. Knudson, 21 N. D. 562, 132 N. W. 149. And the appellant has the burden of proving, and must present a record affirmatively showing, such error. Davis v. Jacobson, 13 N. D. 430, 101 N. W. 314.

The principal issue in this case was one of veracity. We have al-

ready set forth, in part, the testimony of both the plaintiff and defendant. There was a square conflict between these parties. The real question for the jury to determine in this lawsuit was whether Mrs. Erickson or Wiper told the truth. If Wiper told the truth, he had paid for the land in full. If Mrs. Erickson told the truth, then Wiper still owed her the amount which she was awarded by the jury. Hence, in this case the prime question was one of credibility of the witnesses and the weight of the testimony of the respective parties. These were questions for the jury. 38 Cyc. 1516, 1518. The jury decided these questions in favor of the plaintiff. The jury's finding is binding on this court.

What we have said above disposes of every assignment of error presented by appellant on this appeal. Not a single question has been ignored or passed. We have, perhaps, quoted from the record to a needless extent, but we have done so in order that the correctness and fairness of the rulings of the trial court may be apparent to anyone. Defendant has no cause for complaint on account of any ruling of the trial court.

It is argued that the jury in arriving at its verdict was influenced by passion or sympathy. As already stated no motion was made for a new trial, and the question under consideration was never presented to the trial court for determination, and there are no specifications of error under which it could be considered in this court. But, as we have already stated, the principal issue for the jury to determine was whether Mrs. Erickson or Wiper told the truth. The question of sympathy can hardly enter into a case of this kind so as to affect the verdict. If Wiper told the truth, and Mrs. Erickson lied, then he had paid for the land in full, and Mrs. Erickson was not entitled to one cent. If, however, Mrs. Erickson told the truth, then Wiper still owed her the amount she recovered. Juries are doubtless at times influenced by passion or prejudice in cases involving injuries to person or character in such way as to return verdicts for excessive amounts. But it is hard to believe that twelve honest, intelligent men could or would be induced through sympathy to violate their oaths and take the defendant's money and give it to the plaintiff. The issue in this case was square cut. Did Mrs. Erickson tell the truth or did Wiper? The question of riches or poverty does not affect a person's veracity. If the trial judge was satis-

fied that the verdict was rendered under passion or prejudice, or in disregard of the evidence or the instructions, he had the right to set it aside. Comp. Laws 1913, § 7665. If the trial judge believed that there was any probable reason for granting a new trial, he could have requested such motion to be made before the appeal was taken. Comp. Laws 1913, § 7843. The jury and trial judge saw the parties and their witnesses, and heard their stories as given upon the witness stand. The jury by its verdict said the plaintiff told the truth. The trial judge (who is presumed to have done his duty) refused to interfere with the jury's findings.

We find no error in the record justifying a reversal. The judgment appealed from must therefore be affirmed. It is so ordered.

Burke, J., dissenting. The majority opinion makes no attempt to justify or deny the miscarriage of justice presented by the record in this case; it lays the blame upon the shoulders of the jury, falling back upon the platitude that it is better for an innocent litigant to suffer than that the court should invade the province of the jury.

With this doctrine I have no quarrel, but there is another doctrine equally important, that the majority is overlooking, and that is that every man is entitled to a fair and impartial trial before a jury of his peers.

A trial of an issue of fact before a jury is a serious and solemn, if not a sacred, thing. It is the first duty of the trial judge to see that every litigant is accorded such a trial. The sooner trial courts recognize and assume this responsibility, the sooner will the world at large accord to the courts of this country the respect and confidence so essential to a well-governed country. One reason why courts suffer from the ridicule of the laymen at present is the occurrences of miscarriages of justice like the one before us. An examination of the evidence shows in brief the following facts: Erickson and his wife owed the bank something over $1,200, some of it secured by a second mortgage upon his farm and some secured in other ways. The first mortgage against the land was $2,000. There were unpaid interest and taxes upon this first mortgage, which made Erickson's total indebtedness run up pretty close to $4,000. The undisputed evidence is that Wiper went to the farm to collect the money due the bank, and while there Mr. and Mrs. Wiper

tried to sell him the farm for $5,000. Mrs. Erickson testifies that Wiper told Erickson that, if he did not quit drink, there would not be anything left on the farm, and she further testifies: "John (Erickson) wanted to sell the land because he wanted to go to Canada, and I said I have signed enough, but if you want to go to Canada I will sign the land if there is anything left in the land, and Mr. Wiper said he would figure it. He said there was a $2,800 mortgage—. . . I said I wanted to have something to say in that land, for that homestead belongs to me just as much as to him. . . ." Wiper testifies that the sale was finally made for a consideration of $4,000 for the quarter section, $2,800 of which was the assumption of the first mortgage, interest, and taxes, something like $1,000 due to the bank, and $125 paid in cash to Erickson to allow him to go to Canada to look for another homestead. Upon that date he executed an instrument in writing, as follows:

July 22, 1911.

On payment to me of the sum of four thousand dollars ($4,000) less the then encumbrances, I agree to convey to John Erickson of Coteau, N. D., by quitclaim deed the S. E. ¼ of sec. 23, 161–90, same being the amount I am taking said land over at to-day. I also agree to collect two promissory notes signed by John Erickson in favor of the First National Bank of Bowbells,—one for $650 and one for $154.65,—secured by said lien on lands owned and rented by John Erickson, and to pay to John Erickson any and all money due him from such collection after deducting amount necessary to pay me for advances necessary to make the land net me just $4,000 after paying all taxes, and past-due interest, and any and all advances made to you up to and including cash paid at this date. Also all bills which I have guaranteed for you up to this date, which is $48 to Rogers Lumber Company.

(Signed) A. C. Wiper.

Erickson went to Canada, where he died on the 22d of the following August. Plaintiff now brings this action, alleging an oral promise on the part of Mr. Wiper to pay to her all of the moneys above the first mortgage on the land, and claiming that the purchase price was $5,000 in place of $4,000. Her evidence consists of her own testimony. Mrs. Rouse, the only witness besides herself, in no manner supports Mrs. Erickson's version of the contract. The most casual examination of the evidence discloses the utter falsity of the testimony of both of those

witnesses. For instance, Mrs. Erickson testifies upon cross-examination that Mr. Wiper, the president of a solvent bank, had agreed to pay her personally in cash something over $2,000 for joining with her husband in signing the deed, and yet admits that during a period of six months of the most extreme poverty and privation she never asked for this money, nor gave any intimation to any person living that she had this asset. During this time her husband had died in Canada, and was buried at the expense of the county, and she and her children had been receiving county aid. The utter improbability of such conduct on her part under those circumstances is plain enough without any elaboration from me. Mrs. Erickson is contradicted by the disinterested witness, Heath, the driver of the livery automobile, who heard the entire contract between Erickson and his wife and Wiper. She is also contradicted by her old-country friend, Dahlquist, who came with her to the bank on one occasion. He testifies that upon an occasion after the execution of the deed he went with Mrs. Erickson to the bank and heard a conversation between Mrs. Erickson and Wiper. He was asked to give the substance of it and replied: "A. Well the meaning, anyway, of it— if Mrs. Erickson or the family could get more than $4,000, or whatever it was, they should get the profit. Wiper said he only wanted the money and did not want the land, and, 'what profit you can get out of it is yours,' he said."

When we remember that Dahlquist was her friend from the old country, upon whom she always relied for advice, and that he testifies that several months after she claimed to have received Wiper's promise to pay her $5,000 for the place less $2,800 mortgage, she was in the bank talking with Wiper, admitting that the purchase price was $4,000, and that Wiper voluntarily offered to give her anything above that sum for which she might sell the farm, it is further almost unbelieveable that Wiper would have made a promise to pay to her everything above the first mortgage on this farm, while the bank of which he is president had over $1,200 coming from Erickson, $400 of which was secured by a mortgage upon the farm itself.

As for the testimony of Mrs. Rouse, it need only be said that she did not hear the contract between Wiper and the Ericksons. That she was unscrupulous and untruthful appears from the testimony in many places. We will mention but one instance. She testifies that Mr.

Sinkler, Mrs. Erickson's attorney, was conducting her case without compensation, in order that justice might be done. The effect of such benevolence upon a jury can be readily imagined. An examination of the record, however, shows that brother Sinkler has filed the customary attorney's lien for one third of the judgment recovered.

Even at that, I agree with the majority that the case should have been submitted to the jury, but upon such testimony the strictest observance of the legal rule should be required. The trial court should keep the parties within the issue,—should accord to a bank the same consideration shown to a poverty-stricken widow. Justice should be blind. An examination of the record shows the most glaring violations of this simple rule. I will site only one instance of the kind of testimony that reached this jury and had its effect, no doubt, upon the verdict. Mrs. Rouse volunteered the following: "This woman (Mrs. Erickson) came to me—I mean that we thought the boy was going to die, if we could not hold his home, and he sat there day after day with tears rolling down his face, and we thought he was dying, and she said to me, 'Save the home if it is possible to save it;' and that is what I mean, that we should try to save the home if it was possible to save it, and that is what I mean." In justice to the trial court it should be said that he immediately struck out this answer, but the harm had already been done, and, besides, such a voluntary statement shows, to my mind, that it was preconcerted. As another instance of the methods used to influence the jury against the defendant, we cite the following fact: Mrs. Erickson, as already stated, was cross-examined as to why she had allowed the county to bury her husband as a pauper, while she had over $200 in cash coming from this rich banker. This was a perfectly proper question. It brought up the probability of her story. It was admitted for this purpose alone, and yet upon cross-examination in an argument plaintiff's counsel was allowed to shed tears over her sorry plight.

Again, she was asked upon cross-examination, why she did not write to Wiper, demanding this money. She replied that she could not write, and was asked whether or not she did not have children old enough to write. This was perfectly proper and was admissible for the single purpose of discrediting her when she said she had actually over $200 coming. Any redirect examination should be confined to her reasons for not writing to Wiper, and yet counsel was allowed to show, in explana

-tion as he said, that she was the mother of eight children and that two of them were imbeciles.

We give a short extract:

Q. (By Mr. Sinkler) The oldest child,—can he talk?

(No answer).

Q. He doesn't know anything, does he?

A. No.

Q. Has he ever been able to help himself in any particular?

A. No.

It is conceded that, besides the two imbeciles, there were several other children who were well able to have written to Wiper, demanding the money. There can be little doubt that the parading of the two imbeciles before the jury was prejudicial, highly prejudicial, error. Again, in his address to the jury, counsel went outside of the evidence and offered his testimony, as follows:

"It is not to be wondered at, this gang from Bowbells are all here telling the same story for the purpose of robbing this woman."

"Defendant wanted to get the plaintiff into Canada, and the reason for wanting to get her there was to get her out of reach, so that he would not have a lawsuit."

He further stated that he could go across the road and sell the farm to Mrs. Rouse for $4,500. Those remarks of counsel were all unsupported by the evidence, were duly excepted to by defendant, under the most elementary principles were prejudicial error. As it seems to me, from the beginning to the end of the trial, the poverty of plaintiff, her large family, and her imbecile children, were paraded before the jury. It was, of course, unfortunate that she was left in those circumstances by an intemperate husband. It was also unfortunate that the county was obliged to pay the burial expenses of her husband. Those are social and economic questions. The men who sold Erickson intoxicating liquor are more responsible than Wiper for this condition. None of those things, however, had the slightest bearing upon whether Wiper had promised to pay her $200 in cash, while the bank of which he was president held Erickson's notes unpaid. The errors which I have enumerated

require a new trial upon the settled rules of law. For the foregoing reasons I am unable to concur in the affirmance.

Goss, J., dissenting. My dissent is not upon the issues passed upon by the jury or upon the conduct of the trial, but, in my opinion, plaintiff's recovery is and should be barred by the statute of frauds, and this, too, irrespective of pleading, as plaintiff recovers only upon a departure in proof from her cause of action as stated in the complaint. A cause of action is pleaded, based upon the release by a wife of her homestead right in real property owned by her husband, and seeks a recovery of an amount alleged as agreed to be paid her for such *release*. The complaint is very carefully and skilfully drawn, and is not vulnerable to demurrer. But it is on the proof that the *denouement* occurs, and the real purpose of the suit is then first disclosed to be indirectly a round-about one to recover not as for consideration for a *release,* as pleaded in the complaint, but instead of a portion of the very consideration for the deed given, and which consideration has been, in whole or large part, paid to the husband, grantor. The impossibility of a recovery by this plaintiff of a portion of the consideration, *as consideration* for the deed she and her husband signed to Wiper, is very apparent when it is remembered that the land conveyed belonged to the husband, title stood in his name; and he has died since the transfer. His estate, and not this plaintiff, must recover, if anyone possess a cause of action to recover for any balance of *purchase price* for this deed. But this does not purport to be to recover such purchase price, but is an action virtually by a third party, beneficiary of a trust, to recover of the trustee for her use. And this is attempted to be proven by parol, and to be ingrafted upon a deed of the husband, since deceased, to the defendant, and that, too, contrary to the terms of that deed, which was also signed by this plaintiff as a grantor. It seems to me that recovery cannot be had as for the consideration for the deed. In other words, this widow cannot recover in her own name and as her own cause of action any part of what was the purchase price, the consideration for the deed of her husband's homestead to Wiper. Assume that the purchase price for this land was to be $5,000, instead of $4,000, as claimed by Wiper, nevertheless that balance of purchase price, Erickson being dead, is due from Wiper to Erickson's estate, and not to Mrs. Erickson. And notwith-

standing her recovery in this case the administrator of Erickson's estate can sue and recover for any balance of said purchase price.

Bearing in mind that the complaint is for a cause of action founded upon a release of a homestead right or impediment, let us examine the proof as to how plaintiff has attempted to establish her cause of action upon this contract. The answer is a general denial, and puts plaintiff upon her proof. This she attempts to meet by showing that she has joined in the deed of her husband to Wiper, and testifying that before she did so Wiper had *orally* agreed with her to pay her "all there is over the mortgage, and the mortgage was $2,800, . . . and I was supposed to have the rest and the land was $5,000. He agreed to that, and after he agreed to that I signed the deed." "My husband said to Wiper, 'All I want is $150, and the rest goes to my wife.'" All the consideration for the deed to the amount of $4,000, claimed by Wiper to be the consideration therefor, was paid by defendant to the husband. She has recovered a judgment for a portion of the consideration paid him for this grant of *his* real estate, and a thousand dollars besides as a balance of *such consideration*. And this is all the proof. It is contended that by her joining in the deed she has partially performed the alleged parol contract that the money consideration should go to her; and thereby taken the transaction out from under the bar of the statute of frauds, permitting her to prove by parol testimony, and without any writing other than the deed, the collateral contract thereto under which the consideration moved to her as a releasor of her homestead interest; and this, too, in direct contravention of the terms of the deed wherein she has contracted and covenanted as and to be a grantor. The sole question is whether this proof answers the requirement of the statute of frauds.

Respondent admits that the deed, as such, cannot be varied by parol testimony, but has attempted to divert what is stipulated in the deed as consideration money therefor into a consideration for the collateral contract to be paid the plaintiff, not as consideration for the deed, but as payment for her release of homestead, and this on the plea that the consideration for a deed or other instrument can always be inquired into and shown whether the same may contradict the terms of the deed or not. Notes in 25 L.R.A.(N.S.) 1194–1211; 31 L.R.A. 234; 33 L.R.A. (N.S.) 84; and 8 R. C. L. 969–973. It is now almost elementary law that such parol evidence may be received to show the true consideration

for a conveyance. Alsterberg v. Bennett, 14 N. D. 596, 106 N. W. 49, and note in 68 L.R.A. 925. That a recitation of the receipt of the consideration can be overthrown by parol proof; that the nonpayment of the consideration or a part thereof can be shown under certain limitations; that an action will lie to recover consideration unpaid, notwithstanding the recitals in the deed that the same has been paid, and, under certain circumstances, that a third party whose debt has been agreed to be paid by the grantee as a part of the consideration for a deed from a grantor, can sue and recover. (But in such a case the deed, while evidencing the grant and the partial performance, does not affect such third party, as it is not his deed. It was not a consideration for his act, and he is not estopped.) About the only limit to an examination into the consideration for a deed (in the absence of fraud involved in a suit to vitiate the deed because thereof) is that the deed cannot be destroyed in effect and operation, but must remain a deed with a consideration. And while the amount of consideration, the manner of its payment, and to whom and when and where and how paid, may all be fully inquired into on parol testimony, yet any and all amounts paid as consideration must remain of the same nature; that is, as *consideration for the grant* and not something else. Every dollar that was paid or that was to be paid as consideration for this deed was consideration for the grant conclusively evidenced thereby, and were not payments partaking of a different *nature or kind,* such as payments for a release of a homestead or a leasehold interest, or any other interest in the land in this suit between one of the grantors, the wife, and the grantee. "One of the purposes of inserting the acknowledgment of a valuable consideration in a deed is to prevent the resulting of any use or trust to the grantor." Washb. Real Prop. § 2284. Plaintiff's very claim in suit is based upon her assertion that part of this money belongs to her and is to come from the grantee as a part of the consideration for the grant, and yet at the same time constitute the consideration for her release of homestead and with the property sold being that of her husband. Thus she seeks to establish, and must establish before she can recover, that the deed operated to make her the beneficiary of a trust for a part of the stipulated consideration, although she is one of the grantors. "A recital of consideration received when it occurs in a deed of grant is usually intended merely as a written acknowledgment of the distinct act of payment, being there inserted for

convenience. Hence, it is not an embodiment of an act *per se* written, and may be disputed like any other admission. . . . In general, then, it may be said that a recital of consideration received is like other admissions disputable so far as concerns the thing actually received, *but that so far as the terms of the contractual act are involved the writing must control whether it uses* the term *'consideration'* or not." Wigmore, Ev. § 2433. Thus the authority distinguishes, as do others, 8 R. C. L. 970; 6 Am. & Eng. Enc. Law, 775; East Line & R. River R. Co. v. Garrett, 52 Tex. 139; Kahn v. Kahn, 94 Tex. 114, at page 119, 58 S. W. 825, between the portion of the deed receipting for a consideration paid and the remainder stipulating the contract. And its importance is this: The deed must have as one of its necessary parts a consideration for the grant to negative a resulting trust. And the stipulated price or consideration is a part of the contractual act itself, the deed. This being so, that it is *consideration* is indisputable by parol testimony. This doctrine is reaverred in § 2283 of Washburn on Real Property: "It is not competent to prove that no consideration has been paid where one has been acknowledged in the deed, for the purpose of impeaching the validity of the deed, unless it is for the purpose of establishing fraud against the grantor. The true doctrine is stated in Grout v. Townsend, 2 Hill, 554, 557, that where a deed acknowledges a receipt of a consideration the grantor and all claiming under him are estopped from denying that one was paid, for the purpose of destroying the effect and operation of the deed, although they may disprove the payment for the purpose of recovering the consideration money. The design of the clause acknowledging payment of consideration is not to fix the precise amount paid, 'but to prevent a resulting trust in the grantee.' " Grant that this grantor plaintiff, who claims to recover as a releasor, contrary to the terms of her grant, in the words of the authority, "may disprove the payment for the purpose of recovering the consideration money," *she cannot make that which she has covenanted by the deed to be consideration for the deed something else; to wit, consideration for the collateral contract upon which she seeks to recover.* She could not recover, except as legal representative of her husband's estate, the title having been in him as grantor, for any portion of the purchase price unpaid. See also Devlin, Real Estate, § 830. The sum paid under this deed must remain as the purchase price for land conveyed by said deed as against the claim

of this grantor that it is something else. True, she seeks to assert this claim under the guise of investigating the consideration for the deed, but the fact of this necessity brands her position as untenable, and that the money she seeks was purchase money and cannot be recovered as for something else, the consideration for a different contract from that evidenced by the deed itself. The force of this reasoning is realized by the plaintiff's counsel, and he seeks to avoid its consequences very cleverly, but signally fails, because his client is not suing to recover as for the purchase price, to do which she must sue as the representative of her husband's estate. Reference is to page 13 of the brief, where counsel says: "The testimony of the plaintiff does not in any manner vary or tend to vary the terms of the deed. The consideration recited in the deed is $5,000. The testimony simply determines the amount which is to go to each of the grantors." Amount of what and to whom? Consideration which "is to go to each of the grantors." But plaintiff does not sue as a grantor, because if she did she would be limited to a recovery upon and for the purchase price, the consideration for the purchase. This she has not sued for, because perforce she could not, except as *administratrix.* Respondent by his very argument shows the fallacy of his position. He himself thus distinguishes between consideration as to purchase price of this land and consideration for the release of the wife's homestead interest therein, which interest did not rise to the dignity of an estate in lands, but amounted to a mere impediment upon the power of alienation by the husband of the homestead transferred. Kuhnert v. Conrad, 6 N. D. 215, 69 N. W. 185; Roberts v. Roberts, 10 N. D. 535, 88 N. W. 289; and Helgebye v. Dammen, 13 N. D. 172, 100 N. W. 245. Again, counsel says: "The deed is silent as to how much money is to go to the husband and how much to the plaintiff." So, plaintiff would divert part of the *consideration* for the *grant,* belonging if existent to her husband's estate, to herself individually under this clever ruse adopted in both pleadings and proof. The one moment this fund is a part of the consideration for the deed; at the next instant it is consideration for something else, entirely different, the release of the homestead interest, with the deed but proof of partial performance of the alleged collateral oral agreement. The deed is full and complete evidence of an executed contract of purchase and sale of the real estate, with a specified consideration stipulated to be the consideration for the grant thereof, and as

having moved from the grantee to the grantors as such consideration, and for no other purposes. Counsel, however, has succeeded in making it serve a double purpose, to wit, consideration for the grant, a consideration paid; and, secondly, as consideration for the collateral oral contract to release, which consideration is wholly unpaid. And the taking of the consideration from the former and applying it as consideration under the latter agreement must operate to ignore the terms of the deed to the extent of the sum paid therefor, being the stipulated consideration for the grant. And if this reasoning can be applied to part of the avowed and admitted consideration for a deed, then all said consideration can thus be made by parol proof the consideration for one or several other collateral contracts. This widow might just as well have claimed the entire $5,000, the contract consideration for the deed, as to claim that portion thereof she has recovered. The principle would be the same.

This dissent concedes that the wife's homestead estate, the necessity of her grant to which may allow her to thwart a sale by her refusal to join in the deed, may be a valid consideration for her release of it. She could have said to Wiper, as she did, and if he, with the concurrence of her husband, had agreed to pay her a portion of the purchase money in consideration of her release of the premises, he must pay her, but proof of such a contract cannot be made by the introduction of her deed, supplemented with oral proof contradicting the very terms of the deed itself. Every condition precedent to her deeding was merged in the deed, and it transferred the land, she joining therein, for the *purchase price, which must remain that purchase price.* By the introduction of the deed she has negatived the possibility of her making proof contradicting its terms by oral testimony, because thereunder she has sold property for a consideration, and she cannot be heard to say that she has not, but instead has sold thereby something entirely different. Because money was the consideration makes the case no different than had this defendant promised to deliver her a horse or a new bonnet if she would join in the deed. In such a case it could not be contended that any part of the consideration for the deed could then be diverted to and constitute the consideration for her release of homestead right. Nor *vice versa* could the consideration for the release be made to stand for the consideration for the deed, the grant.. In such a case she would sue exactly as she has sued here, to recover the horse or the bonnet or

the value thereof, and as upon an independent contract collateral to, but entirely different from, the transfer evidenced by the deed, and she would not in such an avent be compelled, in order to recover, to contradict the very terms of the deed as to consideration, as she is now seeking to do, and must do to prevail, even conceding that $1,000 of the consideration for the deed remains unpaid, and which must be the property of her husband's estate, and not hers individually. · The terms of the deed control in either event, unless her contract concerning the release be in writing. "Under the power of proving by parol the consideration of a written contract, you cannot establish an independent agreement otherwise within the statute of frauds," quoting from Alsterberg v. Bennett,. 14 N. D. 596, at page 599, 106 N. W. 49, in turn quoting from opinion in Howe v. Walker, 4 Gray, 318.

This recovery is the best object lesson of the necessity for the statute of frauds, and emphasizes the reason why that statute was early known as the statute of "frauds and perjuries." If plaintiff prevails it is written, in effect, as the law of this commonwealth that the payment of consideration for a deed executed and acknowledged jointly by husband and wife and delivered to the grantee cannot be made without the grantee accepting the hazard of a suit at law to recover the entire amount of purchase price paid, or any part thereof that the wife may see fit to *orally* assert was to be paid her for her signature to the deed, but in release of her homestead interest. The door is thus opened wide to fraud, and remains a standing invitation to accomplish it through perjury. The purpose of the statute of frauds was to prevent this very thing. This recovery is a circumvention of it under the guise of the investigation of consideration in a deed, as was similarly attempted and condemned in Alsterberg v. Bennett, 14 N. D. 595, 106 N. W. 49, and whereby in practical effect the terms of the deed as to the *nature* of the money paid as consideration are varied, contradicted, and set at naught by oral proof. In my opinion this recovery cannot be sustained upon legal principles on the proof, and should be dismissed.