LENA THORP, Appellant, v. GEORGE W. THORP, Respondent.

(180 N. W. 26.)

**Divorce — order forbidding mother awarded minor child from associating with certain person reversed.**

In 1915 there was duly entered in this case a judgment dissolving the mar-

46 N. D.—8.

riage between the plaintiff and the defendant and awarding to the plaintiff a liberal alimony, giving to her the custody of the minor child and making for its future support a special and generous allowance of $500 a year for twenty years.

In 1919 the court made an order forbidding the plaintiff to move from her residence into an apartment house and from permitting the child to go in company with Mrs. Grant, a teacher in the public schools, and a lady of the highest repute. *Held,* that there is no sufficient reason for the order and it is reversed.

Opinion filed November 1, 1920.

Appeal from an order of the District Court of Stutsman County; Honorable *J. A. Coffey,* Judge.

Order reversed.

*John W. Carr* and *S. E. Ellsworth,* for appellant.

"A defendant in a civil action is not entitled to the provisional remedy by injunction. This remedy is entirely a creature of statute, and is awarded only to the plaintiff in a proper action. Forman v. Healy, 11 N. D. 563, 63 N. W. 866.

"A court of equity will refuse to grant an injunction where circumstances are such that the injunction cannot be enforced by the court, or where such enforcement will require a continuous supervision on the part of the court." 22 Cyc. 781.

"A court of equity ought not to attempt to do by injunction anything that will not be possible by enforcement." McConnell v. Arkansas Brick Mfg. Co. (Ark.) 69 S. W. 559.

"A mandatory injunction will never be granted where its enforcement will require too great an amount of supervision by the court." McCabe v. Watt (Pa.) 73 Atl. 455; Hawley v. Burk, 134 Ill. App. 96; Miller v. Edison El. Co. 73 N. Y. Supp. 376.

*Engerud, Divet, Holt, & Frame,* for respondent.

When it appears that the thing done was something that *ought* to be done we apprehend that technical objections to the procedure will not be permitted to defeat the accomplishment of substantial justice; and if there are any procedural defects they can be easily remedied. Houghton v. Houghton (S. D.) 157 N. W. 316; Arne v. Holland (Minn.) 89 N. W. 3.

The courts have recognized the propriety of safe-guarding children

from exposure to influences tending to impair the affection or loyalty of the children to a parent. Albertus v. Albertus (Iowa) 160 N. W. 830; Ladd v. Ladd (Iowa) 176 N. W. 211; Dimmitt v. Dimmitt (Mo.) 150 S. W. 1111; Copeland v. Copeland (Okla.) L.R.A.1917B, 287, 290 and annotations.

The strict principles of res adjudicata do not apply to provisions of a divorce respecting the custody of children. Houghton v. Houghton (S. D.) 157 N. W. 316; People ex rel. v. Allen, 40 Hun, 611, affirmed in 105 N. Y. 628; State v. Dist. Court (Mont.) 128 Pac. 590; Stone v. Stone (Ind.) 64 N. E. 86; Oliver v. Oliver (Mass.) 24 N. E. 51; Harlan v. Harlan (Cal.) 98 Pac. 32.

If the child were competent to testify, we were not informed as to what she would testify to, and the exclusion of testimony is never reversible error unless by an offer of proof it is shown to be competent and material and its exclusion prejudicial. Smith v. Barnes Co. 32 N. D. 4; State v. Schonberg, 24 N. D. 532.

ROBINSON, J. In 1915 there was duly entered in this case a judgment dissolving the marriage between the plaintiff and the defendant and awarding to the plaintiff a liberal alimony and the custody of her minor child, Margaret Thorp, whose age was then six years. In April, 1919, the court made an order forbidding the plaintiff to remove from her residence to an apartment house over a pool room in Jamestown, and from permitting the child to associate with one Mary Grant, except when in the company of her mother. From that order the plaintiff appeals. The order is made on the judgment roll and on the affidavit of defendant. It avers that the plaintiff continuously and against the best interests of the child permits her to be in the company of Mary Grant, who is imbued with a hatred of the defendant; that the purpose of the plaintiff is to remove the child from her commodious home into a certain building owned by Mary Grant and to place the child in a flat over a pool room frequented by men who stand around the entrance to the room and often use vile language; that in using the flat and passing in and out of it the child would hear bad language; and defendant fears that an association of the child with Mary Grant may estrange it from her father.

Lena Thorp, the plaintiff, makes affidavit that during the life of

the child she has at all times taken the utmost care of her and has ever been watchful of her mental and physical development; that the welfare of the child has always been her first consideration.   The plaintiff also shows good reason for leaving her home and moving into the flat and avers that it is one of the most desirable flats in Jamestown; that it is within three blocks of the public school; that one of the flats in the building is the residence of Mary Grant and her husband and that she, Mrs. Grant, is one of the teachers in the public schools of Jamestown, where she has been teaching for eighteen years; that she is an educated and refined woman whose moral character is above suspicion; that the pool room is a clean, sanitary place and well conducted; and that the plaintiff has never heard Mrs. Grant speak ill of defendant or say a thing of him in the presence of the child.   Her affidavit is well corroborated by that of Mrs. Grant.

In the order, as formulated, the learned judge says, in effect, that the order is granted not only on the affidavits but also on his own personal knowledge of the situation and circumstances affecting the relation of the parties, etc.   That is in no way proper.   If the judge had knowledge of material facts on which to base a decision, he should have stated the same by certificate or affidavit, so that a reviewing court might consider the same.

On the facts, as disclosed by the affidavits, no good reason is shown for interfering with the plaintiff's custody of the child or her right to remove her residence to a desirable flat, nor for any order in regard to the association of the child with Mrs. Grant.   Defendant had no reason for thinking or suspecting that a lady of good character and high repute would think of doing the child so great an injury as to say a word to lessen her pride of birth and her love for a father who has made for her ample and generous provisions.

It appears, however, that more than a year has elapsed since the making of the order appealed from, and that portion of the order which restrains the plaintiff from removing to the flat over the pool room is moot.   Judge Birdzell is of the opinion that that portion of the order should be affirmed and hence disagrees to this extent with the opinion of the writer.   But he is further of the opinion, in accord with the views of the writer, that upon this record there does not appear to be sufficient reason for prohibiting ordinary communication

between the child and Mrs. Grant. The decision of this court is that the order appealed from is reversed in so far as it relates to Mrs. Grant, with costs to the appellant.

BIRDZELL and GRACE, JJ., concur.

BRONSON, J. (dissenting). This is an appeal from an order of the district court restraining the appellant concerning the residence and associations of her child. The facts, necessary to be stated, are as follows:

In October, 1915, a decree of divorce, between the parties, was entered. It awarded to the wife, the appellant herein, the care, custody, and full control of their minor child, with the provisions that the respondent should be permitted to have access to such child at reasonable times and should have the privilege of entertaining such child and have her with him as much as he desired during vacation periods when such child was not attending school. It further awarded to the appellant the home in Jamestown, and $125 per month, support money. It further directed that the respondent should deposit $500 annually until the sum of $10,000 had been accumulated for purposes of a fund for the education of the minor child. In April, 1919, the respondent made a motion to modify the decree by providing that the custody of the minor child be transferred to this defendant or that the decree be modified so as to permanently enjoin the appellant from moving the child into a certain flat, and from permitting such child to come in further contact with one Mary E. Grant. Upon this application, an order to show cause was issued. After a hearing was had on April 28, 1919, both parties appearing through counsel, the court made an order that the appellant be restrained and enjoined from taking the minor child to the apartment involved over a certain pool room, and from making a home for her there, and restraining and enjoining the appellant from permitting the infant to associate with said Mary E. Grant, except when such child was accompanied by her mother. The court in such order further stated that, "after considering the previous records and files in this action and the affidavit of Geo. W. Thorp, attached to and served with the order to show cause, and his additional affidavit made this day, and the affidavit of Lena Thorp;

and Mary E. Grant, as well as the court's personal knowledge of the situation and circumstances affecting the relations of Mrs. Mary E. Grant to the parties herein, and the location and surroundings of the plaintiff's present residence and the building in which the plaintiff proposes to take up her residence with the child in question, the court is of the opinion that it would be inimical to the welfare of the infant daughter of the parties hereto to have her home in said apartments over said pool room, and in close association with Mrs. Mary E. Grant, who occupies part of the said second story of said pool-room building." The appellant has appealed from this order. The papers returned to this court, in addition to the original, notice, and undertaking of appeal, consist of the following papers: Summons, complaint, affidavit of service, stipulation of counsel, agreement of the parties, findings of fact, conclusions of law, order for judgment, judgment and notice of entry of judgment in the original divorce action; also the application of the defendant for modification of decree and for an order to show cause, the order to show cause, the affidavit of the appellant, the affidavit of Mary E. Grant, and affidavit of the respondent and the order herein involved. These papers are accompanied by a certificate of the clerk of the district court. There is no certificate attached by the judge of the district court who made the order.

This case is an equity action. This court may affirm, reverse, or modify the order, so made, if it is to be considered as a modification of the decree of divorce formerly entered in this case. See Rindlaub v. Rindlaub, 19 N. D. 352, 125 N. W. 479. This court might entertain, likewise, at a subsequent date after a modification of the order herein, another petition for a further modification. See § 7844, Comp. Laws 1913; Rindlaub v. Rindlaub, 28 N. D. 168, 147 N. W. 725.

It is apparent in this case that there has been no settlement of the record herein. It does not appear what matters were considered by the trial court excepting such as mentioned in this order. It does affirmatively appear that the court's personal knowledge of the situation and circumstances affecting the relations of Mrs. Grant and the location and surroundings of the appellant's present residence and the location in which she expected to take up her residence were within the personal knowledge of the trial court. It does further appear that the court had under its consideration, in rendering the order herein,

the records in the original divorce action. Manifestly, all of these records have not been certified to this court. The transcript of the evidence in such action has not been sent to this court. This court has recently held that upon appeals of this nature a record must be settled as the statute requires; that either the order of the trial court must describe the papers and the evidence upon which the same were made or the record must be settled. Solon v. O'Shea, 45 N. D. 362, 177 N. W. 757. It appears in the papers certified to this court that Mary E. Grant has been a school teacher in the public schools of Jamestown for a period of more than eighteen years. As suggested upon oral argument it is quite possible that this order as made in its broad language restrains the appellant from associating with said Mary E. Grant even in the relation of teacher and student, unless the appellant be present. Furthermore, it is quite probable, upon the papers as certified to this court, that the question of moving the child's residence to a certain apartment is now a moot question. The order was entered April 22, 1919. The papers in this case were not filed with this court until June 20, 1920. Orders of this character, in effect, modify the decree of divorce entered and ordinarily should be entered as a modification of the original decree of divorce herein. See § 4404, Comp. Laws 1913; Rindlaub v. Rindlaub, 28 N. D. 168, 147 N. W. 725; Houghton v. Houghton, 37 S. D. 184, 157 N. W. 316. It would be manifestly improper to either affirm or reverse this order upon the present state of the record before this court. This court is unable to determine what was the entire evidence presented before the trial court. This court is likewise unable to determine to what extent the question concerning the apartments has become a moot question and the extent to which the association of Mary E. Grant, at least concerning her relation as teacher to such child, requires any modification of the original decree of divorce herein. This case accordingly must be remanded for the purpose of settling a record as this court has heretofore held, and in that connection I am of the opinion that upon the settlement of such record the trial court should permit additional testimony to be adduced by the testimony of the parties in open court, and, of other witnesses concerned, as to whether the questions concerning such apartment is not now moot, and the extent to which specifically the original decree of divorce should be mod-

ified, if at all, concerning the association of said Mary E. Grant with such child, and concerning, particularly her relations, if any, as teacher in the public schools, to such child.

Concerning the latter question it is quite evident that if material evidence was not excluded, it should have been at least adduced. See Laws 1919, chap. 8. To this court trying *de novo* this subject-matter, with the power, beyond a mere reversal or affirmance, to enter another or different order, and subject possibly to a subsequent application to amend its order, if so made, there should be presented a record settled as the statute requires, and containing all the requisite evidence. The best interests of the child, and of the parents so require. The due expedition of this controversy, unfortunate as it seems, and containing potential possibilities of further strife and litigation, so demands.

CHRISTIANSON, Ch. J. (dissenting in part). The decree of divorce in this action was entered in October, 1915. That decree provided: "That the care, custody and full control of said minor child, Margaret Lucile Thorp, be . . . awarded to the plaintiff. That the defendant be permitted to have access to such child at reasonable times and have the privilege of entertaining said child and having her with him as much as he desires during vacation periods and when said child is not attending school; and that should the plaintiff herein depart this life prior to the time that said minor child reaches her majority, then and in that event the custody and control of said minor child should be and hereby is, awarded to Mrs. E. W. Thorp, mother of said defendant." In April, 1919, the trial court made an order, giving directions relating to the care of said minor child. This appeal is from such order. The only ruling complained of—the only ruling presented to this court for review on this appeal—is the making of that order. This is not a case like Rindlaub v. Rindlaub, 19 N. D. 352, 125 N. W. 479, 28 N. D. 168, 147 N. W. 725, where an appeal was taken from the decree of divorce, and this court, on a trial *de novo,* modified the decree, and specifically reserved jurisdiction to make further orders relating to custody of children. See 19 N. D. 392. In the case at bar no appeal was taken from the decree of divorce. The original subject-matter of the controversy was never brought within the jurisdiction of this court. The only matter this court has before it is the order made in April, 1919.

While the order appealed from sought to accomplish two purposes, viz.: (1) To restrain the plaintiff from taking the child to a certain flat above a pool room; and (2) to restrain the plaintiff from permitting the child to associate with one Mrs. Grant, except when accompanied by the plaintiff, the two propositions were to some extent interlocked; and, of course, the trial court was confronted, and required to deal, with the matter as the situation then existed.

The lapse of time has somewhat changed the aspects of the matter, and the majority members have seen fit to treat each of the two provisions separately. I am inclined to agree with the majority members in so far as they say that that portion of the order which restrained the plaintiff from taking the child to the flat over the pool room has become moot. For, it appears that the term during which plaintiff proposed to occupy such flat expired long before this case was submitted to this court. I wholly disagree with the majority members, however, when they say that that portion of the order which restrained the plaintiff from permitting the child to associate with Mrs. Grant, except in the presence of the plaintiff, should be reversed. In my opinion this court cannot, upon the record before us, do otherwise than affirm the order *in toto*.

It should be borne in mind that the order before us was made by the same judge who originally tried the case and rendered the decree of divorce. The evidence in the case is not before us, but the trial judge knew what that evidence was. He knew the parties to the action, the child, and Mrs. Grant. He was familiar with all the surrounding circumstances. He is a resident of the city of Jamestown (a city having a population of about 6,600), and his chambers are in that city. He was familiar with the various places involved in this controversy. He knew the character and location of the home where the child has been living. He knew the location of the pool room and its surroundings. He knew what, if any, part Mrs. Grant took in the trial of the divorce action. No one doubts that his actions were actuated by the highest motives, and a sincere belief that the ends of justice would be best subserved by ruling as he did. Nor can anyone deny that the district court had power to give directions for the care of the child. That power is expressly recognized by Comp. Laws 1913, § 4404, which provides: "In an action for divorce the court may before or after

judgment give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." Comp. Laws 1913, § 4404.

In the decree of divorce the plaintiff was awarded the home which had formerly been occupied by the parties to this action. It is admitted that this is a good home, located in one of the most desirable residential sections of the city of Jamestown. It is admitted that the flat which plaintiff proposed to occupy with her daughter is located over a pool room in the business section of the city. In the defendant's affidavit it is said: "Said flat is located over a large and well-patronized pool room, cigar store, and soft drink establishment, and that the doorway to said flat from the main street of this city, opens out upon the sidewalk, at which place there frequently and almost continuously are congregated large bodies of men, and at and around the entrance of which place oftentimes there are loafing and loitering large numbers of young men of about town, having nothing in particular to do, and frequently vile and obscene language is used at and around said entrance and on said street by promiscuous persons, such as usually congregate around and about pool halls. That in order for said child to live in said flat, it will be necessary for her to pass in and out thereof, and by and through said crowds and to continually hear such obscene and indecent language, and witness such loud and boisterous conduct."

There are, it is true, affidavits by the plaintiff and Mrs. Grant (the owner of the building), to the effect that the pool room is under the constant supervision of the peace officers of the city, and is a clean, sanitary, and well-conducted place. But surely this court cannot say, upon this record, that the condition related in the affidavit of the plaintiff is not the true one. That is a matter upon which the findings of the trial court should control.

What about the second provision of the order? As already stated, we have no means of knowing what connection, if any, Mrs. Grant had with this action at its inception. The evidence upon which the decree was based is not before us. Upon the oral argument it was stated by respondent's counsel, and not denied by appellant's counsel, that Mrs. Grant took some interest in the matter at and prior to the time the decree of divorce was entered. It was further stated that the

defendant felt that she was largely responsible for the trouble between the parties to this action which resulted in the divorce proceedings.

In his affidavit, defendant, says: "This defendant verily believes that the said plaintiff is not fully aware of the embarrassment caused this defendant by allowing said Grant to associate with said daughter. That many times and frequently said Grant has the daughter of this defendant on the streets and in public places when her mother is not with her; that when said Grant is not with said child that the child is free and happy with her father at such times as she visits him or meets him; that frequently when this defendant meets said Grant on the street, whether with or without the child, said Grant appears to endeavor to display in the presence of said child and others and in public places, by facial expressions and an assumed contemptuous attitude, her dislike and hatred towards this defendant, and that at such times as she is so with the child, the child is very much embarrassed, due no doubt to the fact that she is now old enough to become aware of the enmity existing between defendant and said Grant, and that said daughter is embarrassed and hesitates to speak to this defendant when she is in the company of said Grant, either due to the fact that she feels that defendant does not desire her to be with said Grant, and that she therefore may think that he thinks that she is disloyal to him, or else she feels that she will be criticized or embarrassed if she speaks to her father in the presence of said Grant."

In her affidavit, plaintiff says: "That never since the granting of said decree of divorce, has this plaintiff heard the said Mary E. Grant make any remark derogatory of the character of the defendant in the presence of the said minor child. That this plaintiff did, after the granting of said decree, *caution* said Mary E. Grant against discussing the matrimonial difficulties of plaintiff and defendant in the presence of said child, . . . That this plaintiff *did forbid* the said Mary E. Grant from making any reference to said matter at all, or any reference to the defendant, in the presence of said child, and that this plaintiff has never at any time heard said Mary E. Grant mention this defendant in the presence of said child."

In her affidavit Mrs. Grant specifically admits "that her feeling toward (defendant) at the present time, while not of vindictive hatred, is such as would condemn in the strongest terms possible his course of conduct toward the plaintiff and his behavior in general."

Here we have Mrs. Grant's admission under oath, voluntarily made, in an affidavit of her present feelings towards the defendant. We also have the sworn statement of the plaintiff that she "did *forbid* the said Mary E. Grant from making any reference to said matter (the matrimonial difficulties of plaintiff and defendant) at all, or any reference to the defendant, in the presence of said child." We have the sworn statement of the defendant as to the conduct of Mrs. Grant towards him, and the conduct of the child towards her father when she is accompanied by Mrs. Grant. Under the terms of the decree (which has never been assailed) the defendant was "permitted to have access to such child at reasonable times," and was accorded "the privilege of entertaining said child and having her with him as much as he desires during vacation periods and when said child is not attending school." The decree further provided that in case plaintiff died before the child attained majority, defendant's mother should have the custody and control of the child. There is no contention that the provisions of the decree were unsatisfactory. Neither party appealed therefrom. It is admitted that the defendant has fully complied with the terms and provisions thereof; and the proof shows that he has made contributions towards the support of his daughter, in addition to those prescribed by the decree. Can it be said upon the record before us that it was not necessary to make the order appealed from in order to preserve to the defendant the rights accorded to him by the decree? Can it be said that that order is not conducive to the welfare and happiness of the child? Why did the plaintiff find it necessary to *"forbid* Mrs. Grant" to make "any reference to the defendant" before the child? Is it possible for anyone who entertains such feelings for another as Mrs. Grant's affidavit shows that she entertains towards the defendant to conceal those feelings from a child as old as the one involved here? Under the circumstances was it wise for, would it be conducive to the welfare and happiness of, the child to be so placed that she would be in daily contact with Mrs. Grant? Would this be fair to the defendant, or would it be fair to the child? These, and similar questions readily suggest themselves, and probably suggested themselves to the trial court. The trial court,—not this court, was charged with the duty of giving "such direction for the custody, care, and education of the child as might seem necessary and proper." Section 4404, supra. The per-

formance of this duty required the exercise of judgment upon matters not strictly judicial in their nature. By the very nature of things men of equal intelligence might differ as to what directions should be given for the care and education of a child. It is a matter of common knowledge that parents, both equally devoted, frequently differ on matters of that kind. Clearly the power conferred by § 4404, supra, is a discretionary one. The discretion should be exercised with due regard to the welfare of the child and the rights of the parties. 14 Cyc. 808. The presumption is that the trial court exercised its powers properly. This court has no right to substitute its judgment for that of the trial court. This court can interfere only where it is clearly shown that the discretion vested in the trial court has been abused. And whoever asserts an abuse of discretion has the burden of presenting to this court a record affirmatively showing that such assertion is true. Erickson v. Wiper, 33 N. D. 193, 225, 157 N. W. 592. In my opinion the record in this case wholly fails to show any abuse of discretion.