Rehearing denied.

Birdzell, Ch. J., and Robinson, J., concur.

---

ED. W. JOHNSON, Respondent, v. JOHN KITTLESON, Appellant.

(189 N. W. 837.)

**Druggists — evidence held insufficient to show hogs died from cholera medicine furnished plaintiff by defendant.**

In a neighborhood where pig cholera prevailed to an alarming extent the plaintiff and defendant were in a kind of pig partnership. In a neighborly way,

and not for any reward, and to save his own pigs as well as those of the plaintiff, defendant gave the plaintiff some dope which he had bought and used for pig cholera. The plaintiff gave it to nineteen pigs and one sick sow, and within three days they all died. This action was commenced on the claim that the cholera dope had poisoned the pigs, and defendant appeals from a judgment against him.

*Held:* That the testimony clearly shows that the pigs died of the cholera, and not of poison; and as it appears that plaintiff has no chance to prevail on a second trial, the judgment is reversed and the action dismissed.

Opinion filed July 14, 1922. Rehearing denied September 9, 1922.

Appeal and Error, 4 C. J. § 3223 p. 1186 n. 61; Druggists, 19 C. J. § 68 p. 785 n. 58.

Appeal from a judgment of the District Court of Cass County; *Cooley,* J.

Reversed and action dismissed.

*Chas. A. Lyche,* for appellant.

There is absolutely no competent proof in this case to sustain plaintiff's claim and that the verdict should be set aside as a matter of discretion. Voge v. Penney (Minn.) 77 N. W. 422; C. L. 1913, § 7656; Ross v. Robertson, 12 N. D. 27; Dinnie v. Johnson, 8 N. D. 153.

"It does not necessarily follow that a verdict rendered should stand, if it is unwarranted by the evidence, although the court has omitted or refused to direct it." Drew v. Lawrence, 37 S. D. 620, S. C. 159 N. W. 274.

A new trial will always be granted where the verdict is plainly and manifestly against the weight of the evidence and a statute which authorizes a new trial for insufficient evidence confers power to grant a new trial where the verdict is against the weight of the evidence; but in this case there is no evidence supporting essential allegations of the complaint. McDonald v. Walter, 40 N. Y. 551; Inland etc. Co. v. Hall, 124 U. S. 121, 31 L. ed. 369, S. C. 8 Sup. Ct. Rep. 397; Met. Ry. Co. v. Moore, 121 U. S. 558, 30 L. ed. 1022, 7 Sup. Ct. Rep. 1334; Fuller v. Northern Elevator Co. 2 N. D. 220; 29 Cyc. 832; S. C. 50 N. W. 359; Reynolds v. Lambert, 69 Ill. 32, Comp. Laws 1913, § 7660.

*W. J. Courtney,* for respondent.

ROBINSON, J. In September, 1919, near Galesburg, in Traill coun-

ty, the plaintiff was a tenant on a farm of defendant. Both parties had pigs on the farm. The pigs all ran together and drank from the same creek. The plaintiff owned one sow and eight spring pigs; defendant three sows and eleven spring pigs, in common with the plaintiff. That is, each party had a half interest in eleven of the spring pigs. Cholera was prevailing in the neighborhood. One Mr. Miller had lost sixty pigs. Defendant had lost one sow and another was sick of cholera. Plaintiff put the nineteen pigs into their house and sent defendant a message of distress. He quickly arrived with some dope for the prevention or cure of pig cholera. He had bought it from Pollins in Rolla and had used it several times. It was in a can with directions thus: "Mix a teaspoonful of the dope in a gallon of water and drink freely of it and let the animals drink freely of it." Defendant put some of the dope into a beer bottle and gave the same to plaintiff, telling him how to use it, as per said instructions. Plaintiff Johnson testifies that defendant told him to put a cupful of the medicine into three pails of water and to give it to the nineteen pigs and the sick sow three times a day; that he did so three times, and in three days the pigs were all dead. Then he put what remained of the dope into a can marked "maple syrup" and sent it for analysis to the Agricultural College.

At the trial Johnson called two professors of the A. C. One testified that the dope contained 4.6 per cent of phenol which is carbolic acid. The other professor, a veterinarian, testified that it contained 10.4 per cent "cresol compounds." Neither professor seemed to know much of phenol or its use or the amount of a poisonous dose. Now as we learn from the United States Dispensatory, a poisonous dose is a half ounce and in two hours the poison causes death.

"Creosote is a mixture of phenols and phenol derivatives." Cresol is used as a surgical disinfectant. It is also a gastro-intestinal antiseptic. Dose 2 to 3 minims. Phenol is a locally irritant anesthetic and mildly caustic in dilute solution of 3 to 4 per cent. It is only mildly irritant but is actually anesthetic and germicidal. Phenol is widely used as a disinfectant not only for sanitary but for surgical purposes. It is frequently used as an antiseptic in gastro-intestinal affections. Dose is 1 to 3 grains."

Now a cupful of the dope contains about six ounces and as each

ounce contains 4.6 per cent of phenol, we find the phenol contents of a cup to be six times 4.6 per cent, or .276 of an ounce, which is only half a poisonous dose. The phenol was the principal part of the compound cresols which the veterinary says amounted to 10.4 per cent. In a six ounce cupful the amount would be .624 part of an ounce. That is barely enough to poison one pig if the whole cupful were given and taken at one swallow, but when diluted in three pails of water the strength is divided by three hundred, so that a person or a pig might safely drink it. Surely to drink it, every drop, would not injure twenty pigs.

Aside from that the testimony of the plaintiff and his wife shows that from the start the pigs exhibited all the marks and symptoms of hog cholera. They all became crooked like a rat with its back up, and huddled together in the pig house, ceased to eat, lost all strength and died within the usual time of death by cholera.

2. But if the dope had been poisonous and had caused the death of the pigs, that would not make defendant liable. He was a common farmer, not a chemist. He was not bound to know or to guarantee the dope. He was only bound to use good faith and honesty the same as if he had owned all the pigs and not merely two sows and a half interest in eleven of the spring pigs. There is no reason for thinking that the defendant acted in bad faith or that he wilfully poisoned his own pigs or those of his neighbor and tenant.

Were there any reasonable chance for plaintiff to prevail on a second trial the opportunity should be given him, but as there is no such chance the judgment is reversed and the action dismissed.

BRONSON and GRACE, JJ., concur in the result; we are of the opinion that the evidence is insufficient to justify the verdict.

CHRISTIANSON, J. (dissenting). I am unable to agree with the disposition made of this case or the grounds on which the majority members base their decision. This case was one properly triable to a jury. It was so tried. This court reviews only the errors assigned upon the proceedings had in the trial court. N. D. Const. § 86; Thompson v. Cunningham, 6 N. D. 430, 71 N. W. 128; State v. Knudson, 21 N. D. 562, 132 N. W. 149; Erickson v. Wiper, 33 N. D. 193, 225,

157 N. W. 592. And the appellant has the burden of proving error, and must present a record affirmatively showing it. Erickson v. Wiper, supra.

In this case there was no motion for a directed verdict and no motion for a new trial and the sufficiency of the evidence was not challenged at all in the trial court. This court has ruled that in such case the sufficiency of the evidence cannot be questioned in this court. See, Horton v. Wright, Barrett & Stilwell Co. 43 N. D. 114, 174 N. W. 67, and authorities cited therein.

I believe, however, that the trial court erred in its instructions to the jury. The court instructed the jury: "There is no direct evidence that they (the hogs) were sick of hog cholera, *or were not in a healthy condition,* and it is for you to determine whether they died of poison if poison was administered to them, or whether they died of some other disease." Error is assigned on this instruction. And in my opinion the assignment is well founded. There was a square conflict in the evidence as to the condition of the hogs. The plaintiff testified that at the time the defendant brought the medicine, all the hogs belonging to plaintiff, which later died, were well. Defendant on the other hand testified positively that the hogs which later died were all very ill at the time he delivered the medicine to the plaintiff. In my opinion the judgment should be reversed and a new trial ordered.

BIRDZELL, Ch. J., concurs.